(Opinion published 57 N. W. Rep. 132.)

## HENRY H. CORSON *vs.* REGINALD H. SHOEMAKER *et al.*

Argued Nov. 8, 1893. Reversed Nov. 29, 1893.

No. 8381.

**Real property is the subject of an action to reform the description of land in a deed.**

An action to reform the description of the real property in a deed is one, the subject of which is the real property, the title of which is sought to be affected; and the relief demanded consists in excluding the defendant from any interest therein, within the meaning of 1878 G. S. ch. 66, § 64, providing for the service of summons by publication.

**Evidence of defendant's nonresidence must be filed before publication of the summons.**

The filing of evidence that the defendant cannot be found in the state is an essential prerequisite to the service of the summons by publication. This evidence may consist, either of the return of the sheriff, or of affidavits by others of facts showing, *prima facie*, that the defendant cannot be found in the state, but in every case the evidence must be filed before the publication of the summons. The mere affidavit of the plaintiff, his agent or attorney, that he believes "that the defendant is not a resident of the state, or cannot be found therein," is not sufficient.

Appeal by defendants, Reginald H. Shoemaker and Amelia D. his wife, from a judgment of the District Court of Hennepin County, *Thomas Canty*, J., entered May 22, 1893.

On March 23, 1874, the defendant Reginald H. Shoemaker and Eliza Fanny Shoemaker then his wife, sold to the plaintiff, Henry D. Corson, seventeen and a half acres of land in the northwest quarter of the southeast quarter of Section thirty four (34) T. 29, R. 24, in Minneapolis for $9,000 and received pay therefor. By mistake a part of the land, about eight feet wide and forty rods long on the south side was not embraced in the description of the land in the deed. Eliza Fanny Shoemaker died testate in 1875. She devised all her real estate to her husband. The will was proved and all her real estate was by decree of distribution assigned to him. He afterwards married the defendant, Amelia D. Shoemaker, and they resided at Pasadena, California. On February 8, 1893, they conveyed this strip of land to Patrick J. Finnegan, but the deed was not recorded.

This action was commenced February 17, 1893, to reform the deed of 1874 to plaintiff and obtain title to the land so omitted. The sheriff made return on the summons February 18, 1893, that the defendant could not be found in Hennepin County, but this return was not filed in the Clerk's office until April 21, 1893. The plaintiff's attorney made affidavit February 24, 1893, that he believed that the defendants were not residents of the State of Minnesota and could not be found therein and it was filed on the same day. The summons was published six weeks, beginning March 4, 1893. Proof of publication and an affidavit of default were made, and evidence submitted to the Court and judgment entered May 22, 1893, for the relief demanded. The defendants appealed to this Court and assigned as error, among other things, that the trial Court did not acquire jurisdiction of the action, because the Sheriff's return was not filed before publication of the summons was commenced.

*Savage & Purdy*, for appellants.

This is a personal action. The entire object of the action is to determine the personal rights and obligations of the defendants. The suit is merely *in personam* and constructive service upon them is

ineffectual for any purpose.   *Pennoyer* v. *Neff*, 95 U. S. 714; *Freeman* v. *Alderson*, 119 U. S. 185; *Lydiard* v. *Chute*, 45 Minn. 277.

This judgment is void for want of jurisdiction, because when the summons was published the sheriff's return of *non est inventus* had not been filed in the clerk's office.   *Bardwell* v. *Collins*, 44 Minn. 97; *Blinn* v. *Chessman*, 49 Minn. 140; *Lane* v. *Innes*, 43 Minn. 137; *Smith* v. *Hurd*, 50 Minn. 503; *Chickering* v. *Failes*, 26 Ill. 507; *Bradley* v. *Jamison*, 46 Ia. 68; *Cummings* v. *Tabor*, 61 Wis. 185.

*Wm. B. McIntyre*, for respondent.

This is spoken of as an action to reform a deed.   Yet, the real object, and the only one, is to settle and determine the legal title to the land.   *Lane* v. *Innes*, 43 Minn. 137.

This action is the same in nature as an action to determine adverse claims, to remove a cloud, to set aside a deed for fraud, to foreclose a mortgage, and in all these cases it has been held that a statute may authorize the service of summons by publication.   *Dillon* v. *Heller*, 39 Kans. 599; *Sweeley* v. *Van Steenburg*, 69 Ia. 696; *Arndt* v. *Griggs*, 134 U. S. 316; *Beebe* v. *Doster*, 36 Kans. 666; *Adams* v. *Cowles*, 95 Mo. 501; *Crombie* v. *Little*, 47 Minn. 581.

There is nothing in any of the decisions of this Court to imply that the return of the sheriff must be made and filed as a condition precedent to publication, on the contrary, the inference from some of them is the reverse.   *Crombie* v. *Little*, 47 Minn. 581.

BUCK, J.   This is an action to reform the description of real property in a deed, and the record thereof, with the usual prayer for general relief.   It is alleged in the complaint that about the 23d day of March, 1874, Eliza Fanny Shoemaker was the owner in fee simple of certain real property situated in the county of Hennepin, in this state, and that about that date she and her husband, Reginald H. Shoemaker, one of these defendants, for the consideration of $9,000, sold said property, and that the Shoemakers intended to execute a warranty deed thereof to plaintiff, but by the mutual mistake of the parties a part of the description of said property was omitted from said deed, and the deed was executed for only a portion thereof.

It is also alleged that said Eliza Fanny Shoemaker died testate in 1875, and by the terms of her will, and the probate proceedings thereon, all of the estate of which said Eliza F. Shoemaker died seised was assigned by the probate court to her husband, Reginald H. Shoemaker, and that subsequently the other defendant herein, Amelia D. Shoemaker, became the wife of said Reginald H. Shoemaker. It does not appear that the defendants or Eliza F. Shoemaker ever resided in this state, but the complaint alleges that the defendants, at the time of the commencement of this action, were residents of the state of California. The plaintiff, proceeding in the action, attempted to obtain constructive or substituted service of the summons upon the defendants, upon the grounds that they were nonresidents of the state, and that the defendants claimed a lien and interest in the real property which was the subject of the action, and also that the relief demanded consisted in excluding the defendants from any interest therein.

1878 G. S. ch. 66, § 64, provides that, when the defendant cannot be found within the state,—of which the return of the sheriff of the county in which the action is brought, that the defendant cannot be found in the county, is *prima facie* evidence,—then, upon the performance of certain other conditions, not necessary to state here in full, the plaintiff may publish a summons, in certain cases, as provided in said section. The service of a summons by publication called "constructive or substituted service," is not in accordance with the common law; and resting, as it does, upon statutory law, it must be strictly followed. It is a constitutional guaranty that no person shall be deprived of his property without due process of law, and is too fundamental to need discussion. A part of this due process of law is due notice; something to bring a party before the court for hearing and judgment, or to warn him that judicial proceedings have been, or are to be, taken against him or his property. Having due notice, he can appear, or remain in default, at his peril. The notice to be given, then, for such purpose is not one of idle ceremony, or mere formality. If personal service of notice or process cannot be made upon a party, then comes constructive or substituted service; and here we must apply the rigid rules of the law, even though, in some cases, it may lead to seeming hardship.

The law recognizes the right of a nonresident to own real property within this state. It guards that right with jealous care, but, while doing so, provides that our own citizens shall not be powerless to enforce their own rights against the nonresident property holder. But it has exacted as a condition precedent to acquiring jurisdiction in such proceeding, where large property interests may be involved, and where the rights of nonresident property holders are to be adjudicated, that the statutory authority must be followed, both in the letter and spirit of the law. This must appear affirmatively. Presumptions will not do. The question here raised is this: Was the plaintiff authorized to proceed with the publication of the summons before the certificate of the sheriff, upon the summons, that the defendant could not be found in his county, was filed with the clerk of the court? Or, in other words, was it a complete return, within the meaning of the law, until it was so filed?

The affidavit of the plaintiff's attorney, as required by law in such cases, was filed with the clerk in due time; but the summons with the sheriff's certificate thereon of defendants' nonresidence was not filed with the clerk of the court until April 8, 1893.

The first publication of the summons was March 4, 1893; and the last one, April 8, 1893. When a sheriff serves a summons personally the proof of such service is made by his certificate thereof. 1878 G. S. ch. 66, § 68. When he is required to make a return that the defendant cannot be found within his county, which return thereby becomes *prima facie* evidence of the fact that he cannot be found in the state, we think that, in order to have that return complete, it includes the sheriff's certificate of such fact, and the filing of the same with the clerk of the court. When this is done the return is perfected, and becomes a matter of record, and *prima facie* evidence of the facts therein recited, as provided by statute. The filing of the affidavit and return would not exclude other competent proof of the nonresidence of the defendants. This evidence may consist either of the return of the sheriff, or of affidavits of others of facts showing, *prima facie*, that the defendants cannot be found in the state, but in every case the evidence must be filed before the publication of the summons. The mere affidavit of the plaintiff, his agent or attorney, that he believes "that the defendant is not a res-

ident of the state, or cannot be found therein," is not sufficient. There is no such proof in this case, however. The omission of the legislature to provide in the law, by express terms that the return should be filed with the clerk of the court, while it did so provide for the filing of the affidavit, was doubtless due to the fact that the return of the sheriff was not deemed complete until filed with the clerk of the court. In the case of *Barber* v. *Morris*, 37 Minn. 194, (33 N. W. Rep. 559,) it was held that, under the section of our statute above quoted, the filing of the affidavit there required to be made by the plaintiff, his agent or attorney, was a condition precedent to an authorized publication of a summons. And in 1 Rice Ev. 217 the rule laid down is that "the admissibility of a return depends upon the fact that it is duly filed, as, upon filing, it becomes a part and parcel of the record in the case." In attachment proceedings, however, under the statute, "the original writ, with the sheriff's certificate of attachment of property indorsed thereon, is admissible in evidence on the trial of the action, although the same was not returned and filed with the clerk of the court until long after the entry of the judgment." *Cousins* v. *Alworth*, 44 Minn. 505, (47 N. W. Rep. 169.)

We do not decide that the officer must forthwith file the summons in the clerk's office upon the making of his certificate, indorsement, or statement upon the summons that the defendant cannot be found in his county; but we do hold that the return, within the meaning of the statute, is not complete, so as to authorize the publication of a summons, until it has been so filed.

We now pass to the more important question,—whether, if all of the conditions necessary to an authorized publication of a summons have been complied with, under 1878 G. S. ch. 66, § 64, the courts of this state can acquire jurisdiction, so as to proceed lawfully for the reformation of a deed, where there has been a mutual mistake of the parties, in omitting from the deed a part of a description of the land paid for by the plaintiff, and intended to be inserted in the deed. We say "more important question," because the conditions precedent for an authorized publication of a summons are easily complied with by the careful practitioner. But, if every statutory prerequisite in this respect has been strictly complied

with, the whole proceedings would be utterly useless, if no juris-
diction could thereby be acquired over the subject-matter, in cases
of this kind. We have already referred to the jealous care with
which the state, in her sovereign capacity, protects the property
and rights of a nonresident, whose property is situate within our
own boundaries. The contention of the defendants is that a state
court is powerless, in an action of this kind, to protect its own
citizens against the acts or mistakes of parties, where the defendant
is a nonresident, and cannot be found within this state. If there
had been a mistake made between the parties, to the injury or dis-
advantage of the nonresident, no one could question his right to
come into our state, and, before our tribunals, have his deed re-
formed, and his rights protected. It is equally as important, and
of as much consequence, that our own citizens have their rights
tried and protected in the forum where the property is situate, and
where it is the subject matter of the action, as that of the non-
resident. The defendants seem to think otherwise. Before the ren-
dition of the judgment in this action, the defendants appeared spe-
cially, and moved to set aside the service of the summons, upon the
ground that the affidavit upon which it was based was untrue, and
that defendants had no property in this state, and did not claim
any interest therein, or lien thereon, at the time of the commence-
ment of this action, and that at the time of the commencement of
the publication of the summons the sheriff of Hennepin county
had not made return that the defendants could not be found in said
county, and that the subject of the action was not real property
situated in the state of Minnesota; also that the relief demanded
in the complaint does not consist in excluding the defendants from
any interest in such property, or in any property. As part of the
motion papers, an affidavit and deed of the defendant Reginald H.
Shoemaker was used, stating that he had on the 8th day of Febru-
ary, 1893, deeded said premises, or a part of them, to one Patrick J.
Finnegan, for the consideration of $250.

The court below overruled the defendants' motion and the par-
ties went to trial; the defendants appearing specially, and object-
ing that the court had no jurisdiction of the defendants. Judg-
ment was rendered for the plaintiff, and defendants appealed from

said judgment upon the grounds that the district court did not have jurisdiction.

We think that the only use that the defendants could make, upon such a motion, of the papers introduced by them, was for the purpose of setting aside the service of the summons; and we understand that it was for this purpose that the affidavit of Shoemaker, and his deed to Finnegan, were introduced,—simply in aid of that motion. If otherwise, and the deed was used as a defense to the merits of the allegations in the complaint, it would be an appearance generally, and a waiver of the imperfect service of the summons. It will hardly be seriously claimed that the material allegations of a complaint stating a cause of action can thus be summarily disposed of by defendants' motion on affidavits. The main question, therefore, for us to determine, is whether, under our statute, the action can be maintained under a substituted service of the summons—that is, where there is no personal service of the summons on the defendant, within the jurisdiction of the court, and no general appearance entered by the defendants,—and was the judgment rendered in the cause valid?

1878 G. S. ch. 66, § 64, subd. 5, provides "that when the subject of the action is real or personal property in this state, and the defendant has or claims a lien or interest actual or contingent therein or the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein," then a duly-authorized service of summons may be made by publication. Where judgment is rendered in favor of the plaintiff in such case, and where there is no appearance of the defendant, he or his representative may, within one year after the rendition of such judgment, upon sufficient cause shown, be allowed to defend. 1878 G. S. ch. 66, § 66.

By 1878 G. S. ch. 75, § 1, any nonresident owning or claiming any interest in or lien upon lands lying within the state may appoint an agent, to whom notice shall be given of proceedings affecting the realty, and service of a summons may be made personally upon such agent, in which case such service is made as valid and effectual against the defendant as if made personally upon him within this state. Thus the nonresident owner of real prop-

erty situate here has it in his power to protect his rights, in such property if he chooses so to do.

In this case, the subject of the action is real property situate within this state. In the complaint, the plaintiff does not allege, in the words of the statute, that "the defendant has or claims a lien or interest actual or contingent" in the property, or that "the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein," but he alleges the facts bringing the case within the meaning and spirit of the statute.

The action is not one peculiarly personal in its nature, as contended by the defendants. The "*res*," as the defendants are pleased to term the written instrument, is not the substantive matter of the action. It is true the plaintiff seeks by his complaint to have the instrument reformed, and have a description of certain land omitted by mistake inserted in the deed. It is not expected that the nonresident defendant will go through the physical performance of inserting in the deed already executed the omitted description, nor make a new deed, including such description; but by 1878 G. S. ch. 75, § 32, it is provided that "the District Court has power to pass the title to real estate by a judgment without any other act to be done on the part of the defendant, when such appears to be the proper mode to carry its judgment into effect, and such judgment being recorded in the registry of deeds of the county where such real estate is situated shall while in force be as effectual to transfer the same as the deed of the defendant."

Construing all of the statutory provisions upon the subject together, we can readily see how shadowy and unsubstantial is the claim of the defendants that the substantive matter of this action is not the exclusion of the defendants from any interest in the land specifically described in the complaint. The real object of the action is to pass the title of the premises, the description of which was omitted from the deed, from the defendants to the plaintiff, who has paid therefor, and yet they negligently or wrongfully refuse to convey it to this plaintiff. They would do so, if they were honest, instead of attempting, by sharp practice, to convey the premises to Finnegan before the discovery of the mistake. The deed is not the title; it is the evidence of it; and such title may

pass by the judgment of the District Court, in proper cases, without the execution of any deed. And if a deed is not necessary, why should its reformation be the substantive matter or real object of the action? That it should be reformed is proper. Sufficient evidence to show that it should be reformed must necessarily be given, but the reformation given by law may be by judgment, and not by a new or reformed deed. The defendants insist that the proceeding for the reformation of a deed is one which has descended from the ancient court of chancery, and that the jurisdiction, in such cases, has neither been extended or abridged by the legislature. Now, while it may be necessary to invoke certain equitable rules or principles in an action of this kind, yet the state has provided, by statutory law, the very method or manner of procedure to determine questions affecting the title to or an interest in real estate within its boundaries.

If the defendant agreed to convey a parcel of land, the description of which land was, by mutual mistake, omitted from the deed, the legal title was still in the defendant. If so, then he had real property in this state, which was the subject of the action. An interest in real estate might include the title. Bishop, Cont. § 1290, says that the expression, "lands, tenements, or hereditaments," includes everything inheritable,—all real estate, in the largest signification of the term,—but that the phrase, "any interest in or concerning them," is still broader; and, in the same work, § 1292, that "the interest in or concerning realty contemplated by this statute may be defined as not only including what is obviously real estate; but also as extending to every sort of legal or equitable ownership, however slight, in whatever is deemed real property, whether at law or equity." Now, when the plaintiff seeks to obtain title to the specific land described in his complaint, is it not an action against a party who has or claims a lien or interest, actual or contingent, in real estate, and that by such action the relief demanded consists, wholly, in excluding the defendant from any interest or lien therein?

Is there any reason or logic in saying that this action is brought for any other purpose? And the authority does not rest in any ancient court of chancery practice, or under any ordinary equitable power or jurisdiction of the District Court, but the procedure is

based upon a positive authority and power conferred by statute. This statute is not to be rendered inoperative by any such construction as is placed upon it by defendants' counsel. It is the very essence of wisdom that such a statute should exist, and this case well illustrates that wisdom, and its necessity. It is a statute passed in the interest of good government, as well as for the protection of private rights. Equity will never cease to be a part of the due administration of the laws of this country. Into very many of our cases it must necessarily come, for the just and rightful disposition of them. The right which enables a party to hold property begets the power to protect it. The right to bargain and purchase it carries with it the right to enforce that bargain. These rights are inseparable, and the duty of the sovereign power to provide authority in this respect is unquestionable. If the remedy in equity is not complete in all respects, including the procedure, then we think it the duty of the legislature to provide for such further remedy or procedure as will make the right effectual. Because an action has the elements of such legislative power, the party is not deprived of the right to invoke the beneficial and just rules of equity.

The subject of the action being within the state, it has the legislative power to determine the method of procedure by which the rights of parties in regard to such subject shall be determined, and equity may be called upon to assist and guide in the determination of such legal right. A man who comes into our state, and purchases real property, should be amenable to our laws respecting that property. Not that our sovereign power is so potent that it can send its process or notice into the forum of another sovereign power, and compel a party to appear here, and subject himself personally to the jurisdiction of our tribunals, and bind himself, in such action as this, by a personal judgment, which is not here sought or contemplated, but that, when he voluntarily becomes the owner of real property within our jurisdiction, he must be deemed to yield to our law, when the title or interest in or to that particular piece of property is in dispute, or involved in controversy, and submit to our statutory method of procedure. He is beyond any obligation to respond personally, but his property must yield to the power of our state sovereignty. When that prop-

erty is threatened with waste, destruction, or damage, he can invoke that sovereign power for its protection, although he may be the subject of another sovereignty. Nor can he escape from the taxation of that property which our government so protects. Taxation is one of the necessary prerequisites for that protection of his property which he has a right to invoke, although never within this state. Nor will it be seriously contended that we have not the right to tax lands situate within our state, although owned by nonresidents. And have we not the right to enforce the payment or collection of such taxes by sale of such lands, if necessary, and, if the proceedings are regular, will not the sale of such lands for such purpose (if the lands are not redeemed) divest the title of the nonresident owner, and vest it in the purchaser at the tax sale? Are the proceedings for the collection of taxes really any more in the nature of a proceeding *in rem* than in this action? Where is the distinction? The property is not seized until after judgment. We do not proceed directly against the land. The service of the notice to the nonresident owner is by publication, not personal. No personal judgment is rendered, nor can it be rendered, against him, but the land is the primary matter or subject of the action or proceeding. Beyond the land, the judgment does not reach. It is not a general judgment, and only operates upon the specific land which has been taxed. That is the effect of a judgment in an action of this kind. It only reaches and operates upon the land described in the complaint, and is not a general judgment operating upon other property. It is true that this court has held that a proceeding for the enforcement of the payment of taxes upon real property is a proceeding *in rem*. *Chauncey* v. *Wass*, 35 Minn. 1, (25 N. W. Rep. 457,) and (30 N. W. Rep. 826.) Yet there is no actual seizure of the land by notice, attachment, or any legal process, for the purpose of bringing the property under the control of the court. Even in attachment proceedings, confessedly operating *in rem*, there is no actual seizure of the real property by the sheriff, but a certified copy of the writ of attachment, and his return thereon, is left in the office of the register of deeds, and a copy served upon the party, if he can be found in the county, and no other act or ceremony is needed. 1878 G. S. ch. 66, § 151. It is only constructive service, and a summons by publication may follow, in case the defend-

.ant is a nonresident. In actions of this nature, the complaint is filed with the clerk of the court, and becomes a public record; and by 1878 G. S. ch. 75, § 34, a *lis pendens* is authorized to be filed in the office of the register of deeds of the county where any interest in real property affected is situate, or where such real property is involved or brought in question.

Now, such a complaint and *lis pendens* each describes particularly the property affected by the action, and the judgment sought affects the land only so described. If this is not an action *in rem*, it certainly is one in the nature of such an action. The land so particularly described is, by the filing of the complaint and the filing of the *lis pendens*, as effectually brought within the control of the court as it is in attachment proceedings. Both records, together, are notice to the public of the right claimed by the plaintiff in the land, and operate as effectually as notice to the defendants of the plaintiff's claim as the filing of the attachment, for the complaint would be filed in the same court, and the attachment and *lis pendens* filed in the same Register of deed. In such cases, the judgment rendered is based upon substituted service, and the enforcement of the judgment operates only upon property within the jurisdiction and control of the court. In such cases, we are not compelled to soar after the infinite, nor delve after the unfathomable, in search of refined distinctions without substantial differences.

The plaintiff does not rest his cause of action upon the inherent powers of a court of chancery, nor upon its general jurisdiction over equity causes, where it is contended such powers are exercised only *in personam*, but upon the statutory power conferred upon our courts by legislative enactments. Of the constitutional power of the legislature to do this, we have no doubt. It seems to be generally admitted, in cases of partition and condemnation proceedings, that judgments of courts will bind the particular property of nonresidents, even though the service was by publication. The decree or judgment in this action will relate to the land described in the complaint, and not to any judgment *in personam*. If the title is adjudged and decreed to pass to the plaintiff, then, by the judgment and operation of law, he has at once constructive

possession, and the right of actual possession. Then he is placed upon an equal footing with other citizens who have legal title to real property, but who are not in the actual possession, or who do not reside thereon.

As to the authorities upon this question, both parties cite *Pennoyer* v. *Neff*, 95 U. S. 714; and it may be that there is language used by the judge writing the opinion, seemingly, warranting the claims of each party. But, taking the whole of the case in connection with the more recent decision of the same court in *Arndt* v. *Griggs*, 134 U. S. 316, (10 Sup. Ct. Rep. 557,) and the opinion of Judge Shiras in *Bennett* v. *Fenton*, 41 Fed. Rep. 283, we think that the very decided weight of authority sustains the views herein expressed. In the case of *Pennoyer* v. *Neff*, Mr. Justice Field stated the law relating to the jurisdiction in cases of the service by publication as follows: "Such service may answer in all actions which are substantially proceedings *in rem*. \* \* \* It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of property without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state, they are substantially proceedings *in rem*, in the broader sense which we have mentioned."

In the case of *Hart* v. *Sansom*, 110 U. S. 151, (3 Sup. Ct. Rep. 586,) it is said that "it would doubtless be within the power of the state in which the land lies to provide that if the defendant is not found within the jurisdiction, or refuses to make or to cancel a deed, this should be done in his behalf by a trustee appointed by the court for that purpose." This is quoted with approval by the court in *Arndt* v. *Griggs, supra*, where it is further said that it follows that if a state has power to bring in a nonresident by publication, for the purpose of appointing a trustee, it can, in like manner, bring him in, and subject him to a direct decree. A part of the syllabus in the case last cited is as follows: "A state has power

by statute to provide for the adjudication of titles to real estate within its limits, as against nonresidents who are brought into court only by publication." In the case of *Huling* v. *Improvement Co.*, 130 U. S. 559, (9 Sup. Ct. Rep. 603,) the law is thus stated: "The owner of real estate, who is a nonresident of the state within which the property lies, cannot evade the duties and obligations which the law imposes upon him in regard to such property by his absence from the state. Because he cannot be reached by some process of the courts of the state, which, of course, have no efficacy beyond their own borders, he cannot therefore hold his property exempt from the liabilities, duties, and obligations which the state has a right to impose upon such property, and in such case some substituted form of notice has always been held to be sufficient warning to the owner of the proceedings which are being taken under the authority of the state to subject his property to those demands and obligations." The power, therefore, of the legislature to pass laws for the adjudication of title to real estate, or of any interest therein, as against nonresidents who are brought before the court only by publication, ought to be deemed settled. That this power has been fully and sufficiently exercised by the legislative enactments referred to, we think fully appears. We should be very reluctant to hold that our laws are impotent to perfect the title to lands held by our own citizens because the nonresident does not come within the jurisdiction of our courts, and submit to their jurisdiction. Any other construction of our laws would leave our titles, frequently, at the mercy of a nonresident owner, and the security of such title, and the welfare of the state, demand that the laws pertaining thereto be upheld.

But, by reason of the imperfect service of the summons herein, the judgment of the court below is reversed.

(Opinion published 57 N. W. Rep. 134.)