# IN THE MATTER OF ANGUS P. McDONALD, AN ALLEGED BANKRUPT.

## February 26, 1913.

1. *Bankruptcy—Subpoena to respondent—Service by publication:* Requisites of order and notice, under bankruptcy act, sec. 18, 30 Stat. 551, am. 32 Stat. 798, discussed.

2. *Same—Same—Same—Publications, number and time of:* The provision of said section 18 for publication of subpoena "not more than once a week for two consecutive weeks" is satisfied by two publications, one on a certain day of the week and another on the same day of the week following.

3. *Same—Same—Return day:* The words "return day," as used in said section 18, refer to the day fixed as the latest limit for the marshal's, or other serving officer's, return of the writ of subpoena into court.

*In Bankruptcy:*   Motion for service by publication.

*E. W. Sutton (Smith, Warren & Hemenway* with him) for petitioning creditors.

CLEMONS, J. [1a] On petition of creditors for an adjudication of involuntary bankruptcy, alleging that, by reason of the respondent's absence from the jurisdiction, personal service of subpoena cannot be made upon him, the question arises as to the form and substance of the necessary order and notice of publication. Bankruptcy act, sec. 18, clause "a," 30 Stat. 551, as am. 32 Stat. 798.

Mr. Collier's form No. 121, Collier, Bankruptcy, 9th ed. 1233, is suggested, which reads in substance, after recital of respondent's absence: "It is ordered: That service of such subpoena be made by publishing this order, together with said subpoena, in ................., a newspaper published at ................., in said district, once a week for two consecutive weeks, the last of such publications to be on the .......... day of ..........., 19...;

and by mailing a copy of this order and said petition and subpoena to the last known place of abode of the said ................., in said district, on or before the day of the first publication."

Publication of this form of order, with the subpoena, would doubtless be efficient and in compliance with the requirements of the bankruptcy act, sec. 18, *provided* the clerk issuing the subpoena be careful to fix the day of respondent's personal appearance, not for the ordinary appearance day (sec. 18, clause "b"), but for a day *fifteen* days after the last publication—i. e., reckoned as five days after the return day (Id.), which in turn is ten days after the last publication (sec. 18, clause "a"). This aggregate fifteen days' period will not, of course, be confused with the "fifteen days" specified earlier in the same clause, and referring to the ordinary case of service upon a respondent who is within the district. See *In re Levy Outfitting Co.*, ante, p. 84, 29 Am. B. R. 13.

However, this form is not favored. It is useless, cumbersome, and conducive to misunderstanding if not error, to advertise an order of publication, and also a subpoena, which is really another order, i. e., an order to appear,— when a single order would do as well, and would save repetition of title and attestation and other matters lengthening the advertisement and nearly doubling the expense.

It is provided in section 18: that "in case personal service cannot be made, then notice shall be given by publication in the same manner and for the same time as provided by law for notice by publication in suits to enforce a legal or equitable lien in courts of the United States, except that, unless the judge shall otherwise direct, the order shall be published not more than once a week for two consecutive weeks, and the return day shall be ten days after the last publication unless the judge shall for cause fix a longer time" (clause "a").

Now, the ordinary practice in the Federal courts outside

of bankruptcy matters, is, in case of service of summons by publication, indicated by a form given by Mr. Loveland, a man of wide experience as clerk of a Federal court having much business. 1 Loveland, Forms Fed. Proc., 503 (No. 334), 82 (No. 65). This form furnishes an order complete in itself and avoiding the weaknesses above suggested as characterizing Mr. Collier's form. There is no such virtue in official form No. 5, Subpoena to Alleged Bankrupt, 172 U. S. 683, 89 Fed. xxx, as to render it indispensable in case of summons by publication, to which use it is not adapted, or to render its repetition necessary, as with Collier's form; but, on the other hand, Mr. Loveland's form contains in substance everything found in official form No. 5. That this recommended form of Loveland's only reflects common practice, see Hagar & Alexander's Bankruptcy Forms, 79 (No. 42).

[3a] As to the matter of appearance day, the fixing of which is above referred to as requiring care: there has been in some cases misapprehension of the intent of the words "return day" as used in section 18; for instance, where they were taken as meaning answer day or appearance day. And it is understood that in one of the eastern districts, the court had fallen somewhat into confusion over these words, by having the subpoena note a day certain for the respondent's personal appearance and then holding the case open for answer or other pleading for a period of five days' grace thereafter, as if such were the intent of clause "b" read in connection with the preceding clause "a" of section 18. On an assumption of these words' meaning day of appearance, such result might be logical enough. Although the definition of Blackstone, e. g., gives an important part to the respondent in the matter of return day, still the leading part would seem to be that of the sheriff, 3 Black. Com. 275; and, historically, or in origin, the words would appear to refer to the officer serving the writ rather than to the person served. In common modern practice,

at least, the words have the meaning of "the day appointed by law when writs are to be returned and filed." *Bankers' Iowa State Bank v. Jordan,* 111 Iowa, 324, 82 N. W. 779, 780.

In any event, it is clear that "return day" as used in this section can refer only to something else than appearance day, and to some other person than the respondent. Thus only is it possible to give a reasonable construction to clause "b," which reads: "The bankrupt, or any creditor, may *appear* and plead to the petition within five days *after the return day,* or within such further time as the court may allow." See *In re Wing Yick Co.,* 2 U. S. Dist. Ct. Haw. 257, 13 Am. B. R. 360.

This view is manifested in Form No. 4 of the official forms adopted by the Supreme Court. This order to show cause upon creditors' petition, after noting a day certain upon which the respondent is to appear, further orders that a copy of the petition, etc., be served on the respondent *"at least five days before* the day aforesaid." See Collier, Bankruptcy, 9th ed., 1111 (No. 27). This special provision bears a good suggestion, in the use of the words *"at least* five days," to-wit, that the appearance day be fixed at, say, the sixth day; for the use of official form No. 5, or any form ordering appearance *at an hour certain,* might be the occasion of avoidable controversy, if not of error, in case anything less than five calendar days, or at least complete days of twenty-four hours each, were counted in fixing the day of appearance. See 2 Black. Com. 141; 8 A. & E. Enc. L., 2d ed., 738.

[2] The provision of section 18 for publication of subpoena "not more than once a week for two consecutive weeks" is satisfied by two publications, one on a certain day of the week and another on the same day of the week following. Though in the local Territorial courts similar provisions as to advertising of notices have been construed to intend a third publication, i. e., an extra publication at

the end of the second week, the word "successive" is, in my opinion, intended only to preclude any possibility of two publications in weeks not successive, and, in any event, so long as a full week intervenes after the second publication (as it does under the ten days' provision of clause "a"), no question can be raised.

[1b] As to the necessity of a return of non est inventus as a prerequisite to the issuance of the order, and of a recital of such return in the order, it would be safe practice to secure a return of this kind: but its necessity has been denied. *Forsyth v. Pierson,* 9 Fed. 801, 803; *Easton v. Childs,* 67 Minn. 242, 69 N. W. 903 (Minn., divided court), overruling *Corson v. Shoemaker,* 55 Minn. 386, 57 N. W. 134, q. v.; also *Bronson v. Keokuk,* 4 Fed. Cas. 220, 221, No. 1,928, 2 Dill. 498.

[3b] The provision as to "return day" may be criticised as cumbersome, and serving no useful purpose,—only giving ground for confusion and error. The common order requiring a respondent to appear or answer within a certain number of days after service of summons, (and, as is sometimes, and desirably, added: "in default whereof the petition is to be taken as confessed," or "default will be entered," or "judgment will be entered against the respondent"), would have been simpler. And such practice is almost, if not quite, universal. For instance, the provisions of equity rule XII is in accord, though the word "returnable," as therein used cannot be applied here. *In re Wing Yick Co.,* supra. In these days of rapid transit, there is no reason why the sheriff should not, and every reason why he should, return the writ into court at the earliest possible moment. Such practice would make for promptness, orderliness, system, and the early discovery and cure of error. Conditions influencing the early common-law practice, if such it was, to make appearance day and return day the same, have no weight now. Slow and difficult transportation might then have made it advisable and rea-

sonable to give the sheriff as much time to get the writ, with his return endorsed thereon, back to "the King's Justices at Westminster" even "from the most remote part of the Kingdom," as was given to the defendant to appear or answer. See Blackstone, supra.

So far as concerns any fancied necessity of statutory enactment in order to hold the marshal or the serving officer up to a high degree of promptness and efficiency by establishing a certain definite limit for the day of the return of his doings under the order of summons,—or of securing from those officers as early a report as possible of the respondent's presence or absence or place of abode, it need only be said that the provision savors of legislative officiousness: the rule of official promptness in case of marshals and their deputies is so well established as to make any such legislation superfluous,—and the courts can always, and better, control their process by special orders as required.

Let the desired order conform with the foregoing suggestions.