## SAN JACINTO RICE CO. v. ULRICH.
### (No. 474.)

(Court of Civil Appeals of Texas. Beaumont. June 30, 1919.)

**1. COURTS ⬅⬀169(1) — JURISDICTION — AMOUNT.**

In an action in the county court for water rent, a cross-action for damages for flooding of corn, placing the value of the corn destroyed at $400, was not a fraud on the court, where it was filed and the value fixed in good faith by defendant's counsel, although the real value of the crop was $1,128.75.

**2. EVIDENCE ⬅⬀489 — OPINION — VALUE OF CORN CROP—QUALIFICATION OF WITNESS.**

A farmer who had been raising, buying, and selling corn for 15 years, and, during year when it was claimed that a crop was destroyed, bought 200 bushels, and read crop reports and market quotations constantly and kept himself advised as to the condition of the corn market and the value of the same, and knew the market value of corn such as would have been raised where the crop was destroyed, was qualified to testify as to what would have been the reasonable value of the crop had it fully matured, and not been destroyed.

**3. TRIAL ⬅⬀140(1)—QUESTIONS FOR JURY—CREDIBILITY OF WITNESSES.**

Credibility of a witness is a question for the jury, and the court cannot assume the truthfulness of the unsupported testimony of an interested party.

**4. EVIDENCE ⬅⬀590 — CREDIBILITY OF WITNESS—INTERESTED PERSON.**

Notwithstanding the rule that the credibility of a witness is a question for the jury, and the court cannot assume the truthfulness of the unsupported testimony of an interested person, a jury is not authorized to disregard the testimony of an interested party and render a judgment unsupported by even an indication from any source that the testimony of such person was not true.

**5. TRIAL ⬅⬀140(1)—QUESTIONS FOR JURY—CREDIBILITY OF WITNESS.**

Where a party, testifying concerning a transaction, introduced original entries made by him at the time covering the points involved, his testimony was taken out of the rule that the court cannot assume the truthfulness of the unsupported testimony of an interested party.

**6. TRIAL ⬅⬀352(4) — SPECIAL ISSUES — MATTER NOT IN ISSUE — DAMAGES — DEFENSES.**

In action by a rice company to recover a balance due for water rent, where defendant set up a counterclaim for damages by reason of flooding of corn, plaintiff was not entitled to have submitted as a special issue the question of whether defendant was negligent in not building a levee to protect his corn, where it did not specially plead such defense.

**7. APPEAL AND ERROR ⬅⬀1070(2) — HARMLESS ERROR—FINDINGS.**

A party cannot complain that an answer of the jury on a certain question was not supported by the testimony, where such question was not properly before the court, by reason of failure to specially plead the matter.

**8. DAMAGES ⬅⬀188(1)—EXTENT OF DAMAGES —SUFFICIENCY OF EVIDENCE.**

In an action wherein damages were sought for destruction of a crop of corn by flooding, evidence *held* insufficient to sustain a finding of the jury that the crop was totally destroyed.

**9. APPEAL AND ERROR ⬅⬀694(1) — RECORD —REVIEW—UNCERTAINTY IN TESTIMONY.**

An assignment of error to the effect that a finding of the jury was not supported by the evidence and was against the uncontroverted testimony must be overruled, where the appellate court, by reason of the witnesses having referred to maps, etc., when testifying, cannot determine from the statement of facts that the answers were not sustained.

**10. DAMAGES ⬅⬀188(1) — SUFFICIENCY OF EVIDENCE.**

In an action for water rent, wherein defendant filed a counterclaim for damages to a corn crop, alleging the value of the corn destroyed to be $400, and that expense of harvesting would have been $100, the court erred in entering judgment for $300 on the cross-action, although the jury found the reasonable value of the corn crop to be $1,128.75, the defendant having filed a remittitur of $828.75, where all the witnesses testified that the cost of raising and harvesting it would have been from $258 to $301.

Appeal from Harris County Court; Roy F. Campbell, Judge.

Suit by the San Jacinto Rice Company against P. C. Ulrich. Judgment for defendant, and plaintiff appeals. Affirmed in part, and reversed and remanded in part.

Campbell, Myer, Myer & Freeman, of Houston, for appellant.

Baker, Botts, Parker & Garwood, of Houston, for appellee.

---

⬅⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

WALKER, J. This is a suit by the appellant against the appellee to recover a balance due on an open account in the sum of $124.48, and also to recover the balance due on the water rent on 82.3 acres planted in rice, contract price being three sacks of rice per acre, 180 pounds to the sack, and on two other tracts of 81.3 acres each, the contract price being two sacks of rice per acre, 180 pounds per sack. The defendant answered, admitting the amount due on the open account, except one item of $6.25, denied generally all other allegations in plaintiff's petition except the execution of the contract as pleaded by plaintiff, and also filed cross-action against plaintiff containing some four counts, totaling $918. The case was submitted to a jury on special issues, and the jury found that the appellee cultivated three tracts in rice under contract with the appellant, tract No. 1 containing 82.3 acres and tracts Nos. 2 and 3 containing 81.3 acres each; rent to be paid as pleaded by appellant. The jury further found that rice at threshing time was worth $3.56 per barrel. On tract No. ·1 the jury found that the appellee delivered to the appellant 44,280 pounds of rice, and on tracts Nos. 2 and 3 that he delivered 51,840 pounds of rice. Only one of appellee's counterclaims was submitted to the jury. This claim was based on an alleged destruction of the crop of corn on 43 acres of land owned by appellee, which he claimed was occasioned by an overflow of water from the canal of appellant, and on this cross-action the jury found that appellee had 43 acres planted in corn, that this crop of corn was totally destroyed by water that overflowed from the canal of appellant, that this damage was due to the negligence of the appellant, and that this negligence was the proximate cause of the destruction of the corn, and that the reasonable market value of the crop of corn that would have been raised on the tract of land was $1,128.75. On the verdict of the jury the trial court rendered judgment for the appellant for the balance due on the account in the sum of $118.23, with interest thereon at the rate of 6 per cent. per annum from January 1, 1915, making the total sum of $140.80, and also rendered judgment in favor of appellant for the difference between the rent contracted to be paid to appellant and the amount of rice which the jury found to have been delivered by appellee to appellant, and also rendered judgment for appellee for $300 as the net value of the damage suffered by appellee in the destruction of his corn crop. From this judgment the appellant has appealed to this court.

Appellant's second assignment of· error is based on the refusal of the court to dismiss appellee's cross-action.

No plea to the jurisdiction was ·filed by appellant. On the face of appellee's pleadings, the total sum of the different amounts asked by him in his cross-action was $918. The county court had jurisdiction of this sum. When appellee and his son were testifying in the trial of the cause, they stated that this 43 acres of land would have made 40 bushels of corn per acre, and at harvesting time that this corn would have been worth 75 cents per bushel, and that it would have cost between $6 and $7 per acre to have made and harvested this corn. Appellee had pleaded that the 43 acres would have made $400 worth of corn, and that it would have cost $100 to have raised and gathered it. His plea was for $300 as the net value of the corn crop. When this testimony was offered before the jury, appellant made a motion to strike out appellee's cross-action, because it appeared that it was fraudulently brought; that appellee knew when he filed the same that the value of his corn crop vastly exceeded the jurisdiction of the county court, and that a fraud had been perpetrated on the court in filing this cross-action, and in arbitrarily reducing the value of the corn crop from $1,200 or $1,300 to $300. The trial court heard testimony on this motion. The lawyer who filed this cross-action testified that he filed the same in good faith; that his client did not tell him that the 43 acres would have made 40 bushels of corn per acre, and that the corn would have been worth 75 cents per bushel, but on his own investigation he estimated that the land would have made $400 worth of corn, and that it would cost $100 to raise and gather the crop, and that he placed the net value of the crop at $300; that when he filed the cross-action he believed that to be the reasonable net value of the probable yield on the 43 acres. On the conclusion of the testimony on this motion, the court overruled it, thereby, in effect, holding that appellee, through his counsel, had in good faith filed the cross-action, and had in good faith fixed the value of the corn crop.

[1] We have carefully examined the testimony on this issue, and believe that the trial court is fully sustained in this ruling.

[2] By its third assignment of error appellant complains of the admission by the trial court of the following question and answer addressed to A. F. Ulrich, a witness for the appellee: ·

"Q. What would have been the reasonable value of the crop of corn had it been fully matured and had it not been destroyed? A. 75 cents per bushel."

The objection was that Ulrich had not qualified sufficiently to answer this question.

The record shows that the witness was a farmer; that he had been raising corn, buying and selling the same, for 15 or 20 years; that during the year 1914, when it is claimed the crop was destroyed, he bought 200 bushels; that he read the crop reports and the market quotations on corn; that he did this constantly, and by so doing kept himself advised as to the condition of the corn market

and the value of the same, and he further testified that he knew the market value of corn such as would have been raised on this 43 acres at harvesting time. We think this record shows that he was qualified to make the answer complained of.

[3-5] By its fifth assignment of error appellant complains of the verdict of the jury in finding that it received 44,280 pounds of rice off of tract No. 1, and 51,840 on tracts numbered 2 and 3; the basis of this assignment being that, according to the undisputed testimony, appellant received 43,300 pounds from tract No. 1, and 50,340 pounds from tracts Nos. 2 and 3.

We have carefully examined the statement of facts on this assignment, and find that appellee in no way contested the testimony of appellant as to the amount of rice received under this contract. In answering appellant's brief, appellee does not answer this assignment. As a witness for the appellant, H. H. Lyons testified that he received for the appellant, from tract No. 1, 43,300 pounds of rice, and from tracts Nos. 2 and 3, 50,340 pounds of rice. He further testified that he made a record of these different weights at the time he received the rice, and the books showing this were duly offered in evidence. As stated above, appellee offered no testimony controverting Lyons' statement of the amount of rice received by him. In fixing the amount of rice received from tract No. 1 at 44,280 and from tracts Nos. 2 and 3 at 51,840 pounds, the jury acted arbitrarily, and their verdict is in no way supported by a suggestion even of any fact in the record. The record shows that the witness Lyons was an employé of the San Jacinto Rice Company. We fully appreciate the rule announced in First National Bank of Plainview v. McWhorter, 179 S. W. 1148, Heierman v. Robinson, 26 Tex. Civ. App. 491, 63 S. W. 658, and Burleson v. Tinnin, 100 S. W. 351, that the credibility of a witness is a question for the jury, and the court cannot assume the truthfulness of the unsupported testimony of an interested party. But, notwithstanding this rule, under the facts in this case this jury was not authorized to disregard all the testimony before it, and to render a judgment unsupported by even an intimation from any source that the testimony of Lyons was not true on this issue. However, we believe that the introduction of the original entries made by Lyons at the time he weighed this rice sufficiently corroborated his testimony to take it out of the rule above announced, even if it be conceded that his testimony was subject to the rule announced in the above-cited cases. The trial court should have instructed the jury to find that appellant had received 43,300 pounds from tract No. 1, and 50,340 pounds from tracts 2 and 3. Under the contract, on tract No. 1 appellant was en-titled to receive 3 sacks of rice per acre from 82.3 acres, making 246.9 sacks, each sack to contain 180 pounds of rice, making a total of 44,442 pounds of rice due from tract No. 1. Under this contract, appellant was to receive 2 sacks per acre on tracts Nos. 2 and 3. These two tracts contained 162.6 acres, at 2 sacks per acre, making 325.2 sacks, at 180 pounds to the sack, making 58,536 pounds. From these three tracts appellee was due rent 102,978 pounds of rice. On the undisputed testimony, appellee delivered 43,300 pounds from tract No. 1, and 50,340 pounds from tracts 2 and 3. Appellee was due as rent a balance of 9,338 pounds of rice. We gather from the record that a barrel of rice contains 165 pounds. This makes 56.6 barrels, at $3.56 per barrel (the market value found by the jury), making a total value of $201.50. On appellant's demands against appellee the judgment of the trial court is reformed, and here rendered in favor of appellant for $118.23, with interest at 6 per cent. per annum from January 1, 1915, this being the balance due on open account, and for $201.50, with interest at 6 per cent. per annum from November 1, 1914, this being the balance due on rice rental.

[6, 7] Appellant has numerous assignments against the judgment for $300 rendered in favor of appellee for the destruction of the corn crop; its first assignment being based on the refusal of the trial court to submit the following special issue:

"Would a man of reasonable prudence, situated as the defendant, P. C. Ulrich, was, have erected and constructed a levee adjacent to the corn crop referred to in defendant's answer and cross-action to prevent the water, if any, from plaintiff's lateral flowing onto said crop?"

Without discussing the testimony on this issue, it is sufficient to say that appellant's pleading in no way raised the issue suggested by this question. Appellee fully pleaded negligence of appellant in permitting his land to be overflowed, thereby destroying his corn. In order to justify the submission of this question, the appellant should have pleaded specially that the appellee was negligent in failing to exercise ordinary care to minimize the damages suffered by him.

As stated in Cooper v. Dallas, 83 Tex. 239, 18 S. W. 565, 29 Am. St. Rep. 645, and Louisville Railway Co. v. Jackson (Ark.) 184 S. W. 450, it was the duty of the appellee to do whatever was reasonably necessary to protect his property from injury, and, if necessary, to incur a moderate expense; yet, before appellant could avail itself of this duty, it must specially plead it against the appellee. This it did not do.

As stated by Associate Justice Brown, speaking for the Supreme Court of Texas in Moody v. Rowland, 100 Tex. 363, 99 S. W. 1112:

"The defendant may, by general denial, put the plaintiff upon proof of facts alleged in the petition, and, under general denial, the defendant would be entitled to introduce evidence which tended to disprove the facts alleged in the plaintiff's petition and to rebut evidence offered by the plaintiff. If a defendant desires to introduce evidence of a fact which does not tend to rebut the facts of plaintiff's case, but which shows an independent reason why the plaintiff should not recover from the case stated and proved, then such defendant must plead the facts which will avoid the legal consequence of plaintiff's case, else the testimony will not be admissible, and a judgment rendered upon such evidence, admitted under a general denial, will not be sustained. Willis v. Hudson, 63 Tex. 678; Smothers v. Field, Thayer & Co., 65 Tex. 435."

However, the court did submit to the jury this question:

"Could the defendant, P. C. Ulrich, by placing a levee parallel to the canal adjacent to the corn crop, have prevented the damage, if any, to said crop?"

To which the jury answered "No." The basis of the fourth and eighth assignments of error is the submission of this question to the jury. Under these assignments appellant advances the proposition that the undisputed testimony shows that such a levee would have prevented the damage to appellee's crop.

For the reasons just above stated, appellant is not in position to complain of this answer to this issue, because the issue was not properly in the case

[8] In its seventh assignment of error appellant complains of the eighth question submitted to the jury as follows:

"Was or was not this crop of corn totally destroyed by water that overflowed from the canal, lateral, or ditch of the San Jacinto Rice Company?"

The jury answered, "It was." Appellant complains of this answer on the ground that it is against and contrary to all the testimony in the record.

R. E. Smith, witness for appellee, testified as to the amount of corn gathered from this land as follows:

"I harvested it. When I got the corn off I put it in his [appellee's] crib, what little he had. There wasn't nothing but some nubbins. I don't know hardly how much I got off of it, but mighty little bit. I did not harvest it. I am Mr. Ulrich's son-in-law. I married his daughter. I don't have any idea how much corn I got off of it that year, but a mighty little bit, though. I never kept no account of the wagonloads. I couldn't tell you how long they were in there harvesting that. I know that they got a mighty little bit of corn off of it. They were hauling corn there is the way I know they harvested it. They had only one wagon working. I don't know how many days they were hauling. I didn't pay any attention to that at all; I wasn't interested and didn't pay any atten-

tion. That is everything I know about it. I helped them cultivate that corn."

On this testimony, which is about all we find in the record on this issue, and is all that is shown in the statements made by appellant and appellee, an affirmative answer to question No. 8 cannot be sustained.

[9] In answering the ninth special issue, the jury found that the destruction of the corn was due to the negligence of the appellant, and in answering special issue No. 10, the jury found that this negligence was the proximate cause of the destruction of the corn.

Objection is made to the answers to these two questions on the ground that there is no evidence in the record to sustain these answers, and that the answers are against the uncontroverted testimony. We have carefully read the rental contracts, and all the testimony as shown by the statement of facts, and because of the manner in which witnesses testified we are, not able to determine whether or not these assignments are well taken. A reading of the statement of facts shows that the witnesses were testifying from maps and plats before them, and in describing drainage ditches and laterals and fences and levees they answered evidently by referring to the map and saying "this ditch here" and "this fence here" and "this lateral here" and "this rice here." While this testimony was perfectly plain to the jury, and they were able to follow it, it has no meaning at all to this court. We find nothing in the contract requiring appellee to build levees or ditches not on his land. It is the contention of appellee and his witnesses that the corn was destroyed by water coming from an old drainage ditch, and that the levee was on the opposite side of the ditch from appellee's corn. Appellant contends in his brief that at a cost from $15 to $20 appellee could have erected a levee on his land that would have protected this corn from such overflow, but he did not plead this, and hence is not in position to complain at the failure of appellee to take this step to protect his corn.

As we are not able to determine from the statement of facts that the answers to these two issues are not sustained, we overrule the ninth and tenth assignments.

[10] Appellant's eleventh assignment of error is as follows:

"Because the court erred in entering judgment in defendant's favor for $300, because the defendant has only pleaded that the corn crop would have been worth $400, and he is limited thereby to that amount, and the undisputed evidence in this case shows that there were 43 acres in the corn crop, and that it would cost from $6 to $7 an acre to harvest this crop; that at this rate it would have cost between $258 and $301 to harvest this crop. After deducting this amount from the $400 claimed would have left a difference of not in excess of $142, to which amount defendant was limited in

his recovery, and entering a judgment of $300 in defendant's favor is, therefore, highly improper, in direct conflict with all the evidence in the case, and erroneous for the reasons stated."

Question No. 11 submitted to the jury was as follows:

"What would be the reasonable market value of the crop of corn that would have been raised on this tract of land?"

To which question the jury answered, "$1,-128.75." After this verdict was returned into court, appellee, on the 27th day of March, 1918, filed a remittitur of $828.75, and moved the court to enter judgment in its behalf for $300 on his cross-action against the appellant. This motion was granted. In granting this motion the court necessarily determined and found that the cost of raising and harvesting this 43 acres of corn would not have exceeded $100. This finding is in the face of and against all the testimony in the record. All the witnesses who testified as to the cost of raising and marketing this crop placed this cost at from $6 to $7 per acre, and a trial court, no more than a jury, can make a finding contrary to and against all the testimony.

For the errors complained of in the seventh and eleventh assignments of error the judgment in favor of appellee against appellant on his cross-action for the destruction of his corn is reversed, and remanded for a new trial, and in all other respects, except as herein indicated, the judgment of the trial court is affirmed.

⬦═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes