AINSWORTH v. TEXAS & N. O. R. CO.*
(No. 1425.)

(Court of Civil Appeals of Texas. Beaumont.
Nov. 17, 1926. Rehearing Denied
Dec. 3, 1926.)

1. **Waters and water courses** ⬳119(4)—**Railroad digging drainage ditches across yards held not to have diverted or impounded surface water (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t).**

Railroad company digging ditch and tributary trenches to drain surface water accumulating between its tracks *held* not to have diverted natural flow of, or impounded, surface water, so as to render it liable under Vernon's Ann. Civ. St. Supp. 1918, art. 5011t, for damages to house on adjoining land by overflow.

2. **Waters and water courses** ⬳119(4)—**Lot owner cannot recover damages to house by overflow caused by ditches permitting natural flow of surface waters from adjoining railroad yards.**

Owner of lot adjoining railroad yards had no such vested interest in nuisance, created by accumulation of surface water between tracks, as to compel railroad to maintain it, so that he would not have to guard against natural flowage from its yards, and cannot recover damages to house on lot by overflow caused by railroad digging ditches across yards and under tracks to permit natural flow.

On Rehearing.

3. **Appeal and error** ⬳671(1)—**Testimony by reference to map must intelligibly identify objects and places to present anything for review.**

Appellate court cannot determine whether natural flow of surface water from railroad's yards was diverted by ditches built by it, so as to render it liable to adjoining lot owner for damages by overflow, where testimony in record referred to "those little ditches," "this ditch right here," etc., and hence could not be applied to maps in record.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Action by C. H. Ainsworth against the Texas & New Orleans Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Jas. A. Harrison, of Beaumont, for appellant.

F. J. & C. T. Duff, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

WALKER, J. Appellant owns a brick house in the city of Beaumont, situated on the north side of his lot immediately adjacent to appellee's right of way, and in the northeast corner formed where Trinity street runs into the right of way. At this point appellee has extensive yards, and Trinity and other streets do not cross the yards, but stop at appellee's property line. The block in which appellant's property is situated extends from Trinity street east 300 feet to Neches street, lying adjacent to appellee's right of way line. For many years prior to 1922, appellee had maintained a nuisance on its yards in the vicinity of appellant's property by permitting surface water to accumulate between its tracks and stagnate. It relieved this condition by digging a ditch in 1922 from Trinity street to Neches street on the south side of its right of way, just north of the dividing line between its right of way and appellant's block, making an embankment on the south side of the ditch on its property, and by digging little trenches under its tracks, thereby releasing the water from under its tracks and conducting it into the big ditch, which carried the water east and west into Trinity and Neches streets. Across appellant's yards, running in a northerly and southerly direction, was a watershed, striking appellee's block near the northeast corner of the brick building. Dividing the flow of the surface water caused that portion of it that fell on the west side of the watershed to flow into Trinity street, and that on the east side of the watershed into Neches street. The evidence does not show that any of the water that would, following its natural outlet, have gone into Neches street, was diverted by appellee's ditches into Trinity street. Prior to the digging of the ditch in 1922, appellant had protected the north side of his building from the flowage off appellee's yard by building a concrete sewer from his northeast corner to the northwest corner where Trinity street joins the right of way, thereby conducting the flowage into Trinity street. In Trinity street on and adjacent to the west side of appellee's brick building, beginning at the northeast corner of Trinity street and the right of way, the city had for many years maintained a small surface sewer or ditch to receive the surface water from appellee's yards and carry it into a larger sewer further down Trinity street. While appellee was digging the ditch across its yards and under its tracks, appellant notified one of its proper agents that the increased flowage caused by these ditches would injure him, and was advised by this agent "to wait and see." The first big rain after the ditches were dug caused the said city ditch on the west side of appellant's brick building to overflow, and as Trinity street is higher than appellant's lot, the water from the ditch ran into his building and caused the damage of which he complains in this suit. No question is made as to the sufficiency of his allegations on that issue, or of the amount of damages suffered, nor of the proof to raise that issue; the evidence raising a probable issue of $15,000.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction January 19, 1927.

Appellant alleged that his damages were caused by the act of appellee in diverting the natural flow of the surface water and in increasing such flow. Appellant was trying to plead a case both at common law and under article 5011t, Vernon's Ann. Civ. St. Supp. 1918. At the close of the evidence the trial court instructed the jury to return a verdict for appellee. We do not further state the pleadings, since appellant's case is controlled by the facts, and no point of pleading, as we understand the facts, is necessarily involved in the disposition we are making of the case. There was no proof of negligence in the construction of the ditches. The facts, as we understand them, show conclusively that appellant's damages were occasioned entirely by the accelerated flow from appellee's yard, caused by the digging of the big ditch and the little drain ditches under the tracks. With appellant's brick building forming a barrier to the water as it came off the yard on the west side of the water shed, it had no outlet except as it drained into Trinity street. As we understand the facts of this case, it is apparent that appellant had not suffered from an overflow of Trinity street prior to 1922, because appellee's tracks impounded the water and retarded its flow, permitting a large wasting both by seepage and evaporation.

## Opinion.

[1] Appellant has no action under article 5011t in Vernon's Ann. Civ. St. Supp. 1918, which is as follows:

"It shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby."

Appellee did not divert the "natural flow of the surface water" that accumulated on his yard. If in its natural flow it would escape in a general southerly direction across the south boundary line of the railroad right of way, appellant himself diverted the flow by so constructing his brick building that the water was forced to flow from his northeast corner by the side of his building into Trinity street at his northwest corner. Appellee did not "impound such water" or "permit the impounding thereof." If the diversion of the surface flowage caused by appellant's brick building could be called an "impounding," then such impounding was caused by appellant himself. All that appellee did was to dig a ditch that would hold more water than appellant's concrete sewer, thereby protecting appellant's building from an overflow which might have been anticipated from the increased flowage caused by digging the little trenches under its tracks.

[2] Nor do the facts give rise to a cause of action at common law Appellant had no such vested interest in the nuisance created by appellee's tracks as to compel it to maintain such nuisance so that he would not have to guard himself against the natural flowage from appellee's yards. This nuisance was not created by nature but by appellee, upon whom rested the duty of abating the nuisance for the good of that general community. There is no suggestion in the evidence that appellee, in digging the ditches under its tracks, did anything more than to restore the state of nature; that is, permit the water to escape from its yards in a southerly direction. But for appellee's big ditch, of which appellant complains, appellant's brick building would have diverted the water into Trinity street.

The judgment of the trial court is in all things affirmed.

## On Rehearing.

[3] Appellant criticizes our finding that "the evidence does not show that any of the water that would, following its natural outlet, have gone into Neches street, was diverted by appellee's ditches into Trinity street," and in support of this criticism quotes extensively from the evidence of his witnesses, especially the engineers, Sherer and Omohundro. This court gave the most careful consideration to all the evidence given by appellant in his brief, and in addition thereto reviewed the entire statement of facts. We could find then, and find now, no evidence in the record contradicting the conclusion we have made. In his motion for rehearing, appellant, after quoting the evidence of the witnesses on this issue, says:

"To understand the full meaning of the above testimony of the witness Omohundro, it will be remembered that he was testifying with reference to the map shown on page 94 of the statement of facts, etc."

It is clear from the testimony that the witness was testifying from the maps. For instance, he said:

"When those little ditches drained that water from between those tracks it drains to the north and south and goes into this ditch right here."

And, "With the condition of that ditch like that."

And, "With that ditch cut that way," etc.

The testimony of all the witnesses in reference to the flow of water must have been given in reference to the maps, and is entirely unintelligible to this court. Since we have no way of knowing what ditch, as shown on the map, appellant's witnesses were testify-

ing about, and when they use such words as "here" and "there" and other descriptive terms, that the court and jury could have understood, when placed in the record for our consideration they mean nothing to us. When a case is being developed by means of maps and plats and the parties are seeking to make a record for review by an appellate court, the evidence must be intelligible and in such condition that when read we can apply it to the maps as found in the record and understand what the witnesses are trying to say. In this case that was not done. On the record before us we cannot find any evidence that can be applied to the maps in the record showing that water was diverted from one side of the watershed to the other. In San Jacinto Rice Co. v. Ulrich, 214 S. W. 777, the record was in the condition we find this one, and in reference thereto we said:

"A reading of the statement of facts shows that the witnesses were testifying from maps and plats before them, and in describing drainage ditches and laterals and fences and levees they answered evidently by referring to the map and saying 'this ditch here' and 'this fence here' and 'this lateral here' and 'this rice here.' While this testimony was perfectly plain to the jury, and they were able to follow it, it has no meaning at all to this court."

We think the record fully sustains us in all the conclusions of fact we have made.

The motion for rehearing is in all things overruled.