### BENN et al. v. SECURITY REALTY & DEVELOPMENT CO. et al.

### No. 2263.

Court of Civil Appeals of Texas. Beaumont.
Nov. 10, 1932.

Rehearing Denied Nov. 16, 1932.

**WALKER, C. J.**

On December 13, 1913, W. B. Cooper and his wife, Sabra, were divorced. As a part of the divorce decree the following property, owned by them on that date, was adjudged to be community property, belonging to them equally, to wit: "A part of the David Brown League and a part of the Mary Anderson one and a half acre tract lying east and adjoining the Herring Addition to the City of Beaumont, Texas, described by metes and bounds as follows: Beginning at the Northwest corner of the Mary Anderson one and a half acre tract thence east with said Mary Anderson north line one hundred feet for corner; thence south at right angles with said Mary Anderson north line 100 feet for corner; thence North on said Mary Anderson west line to her north west corner the same being the place of beginning and being a lot 60 by 100 feet out of the Northwest corner of the Mary Anderson 1½ acre homestead tract." On the date of the decree, this lot was vacant, unimproved property. The divorce judgment was not filed and recorded in the county clerk's office of Jefferson county until February 29, 1922. After the entry of the divorce decree, Sabra Cooper married Jim Benn.

On June 26, 1917, W. B. Cooper sold and conveyed by warranty deed the entire lot to Dr. F. W. Hander. On August 3, 1917, Dr. Hander filed suit in trespass to try title in the district court of Jefferson county against Sabra Benn and her husband, Jim Benn, to recover title and possession of the Cooper lot. No lis pendens notice of that suit was recorded in the county clerk's office of Jefferson county. On the 17th of April, 1918, judgment of nonsuit was entered in that case. On the 17th of September, 1917, during the pendency of that suit, Dr. Hander, for the recited consideration of $177, sold and conveyed by warranty deed the Cooper lot to R. C. Divers. One W. O. Crow was interested with Dr. Hander in this purchase, but his name did not appear in the deed to Dr. Hander. After the purchase by Dr. Hander, he and Crow began the erection of improvements upon the property, but before the improvements were completed the sale to R. C. Divers was consummated. On the 20th day of December, 1917, W. O. Crow and wife also executed a deed to R. C. Divers on the recited consideration of $10 and other good and valuable consideration. On the 15th of November, 1917, R. C. Divers, having completed the improvements, entered into a written contract with W. B. Cooper to sell the property back to him for $1,273.30, to be paid as follows: $20 in cash, and the balance in eighty-three monthly installments of $15.10 each, with interest at the rate of 10 per cent. per annum from maturity. Both the

Kitching & Kenna, of Beaumont, for appellants.

D. E. O'Fiel, O. M. Lord, and W. R. Blain, all of Beaumont, for appellees.

contract and the notes reserved the vendor's lien. The contract provided further that, upon the payment of the first forty notes, Divers would execute a warranty deed to Cooper, and that the failure to pay any of said notes when due or to perform any of the other conditions would forfeit, terminate, and abrogate the contract, and that Cooper would immediately deliver possession of the premises back to Divers, and that all payments theretofore made by Cooper to Divers would be forfeited to Divers to be held and retained by him as rent. On January 15, 1920, Divers conveyed the lot, with sixty unpaid notes, to Violet G. O'Fiel, who, by the terms of her deed, was to carry out the agreement between Divers and Cooper and was subrogated to all the rights, equities, and choses in action in favor of Divers against Cooper.

On the 23d day of April, 1925, claiming to own the notes given by Cooper to Divers, the Security Realty & Development Company, a corporation, filed suit against Cooper for the unpaid balance of these notes and to foreclose the vendor's lien reserved for their payment. Cooper died on the 16th of May, 1925, and soon after his death Security Realty & Development Company took possession of the property, claiming title thereto under the forfeiture clause in the contract between Divers and Cooper, repaired and rented it to certain tenants, and through its tenants was in continuous possession from the date it took possession until this case was tried. On the 30th day of November, 1925, Violet G. O'Fiel, joined by her husband, David E. O'Fiel, conveyed the property to Security Realty & Development Company, in which they owned practically all the corporate stock. The Security Realty & Development Company filed an amended petition in its suit against W. B. Cooper, making him and his heirs and certain other persons and their unknown heirs defendants and including other tracts of land in addition to the Cooper lot. The amended petition changed the cause of action from a foreclosure suit to an action in trespass to try title. Service was had thereon only by publication. None of the defendants answered. An attorney was duly appointed to represent them, and judgment was rendered on January 29, 1927, in favor of the plaintiff Security Realty & Development Company for all the land sued for.

On July 2, 1925, Sabra Benn, as a feme sole, filed suit against R. C. Divers, F. W. Hander, Security Realty & Development Company, and the heirs of W. B. Cooper (Willie Hebert and her husband King Hebert, Terry Cooper, and Gladys Cooper Brockington) in trespass to try title to recover the title and possession of the Cooper lot, claiming to own a one-half undivided interest therein under her divorce decree against W.

B. Cooper. She pleaded the execution of the deed by Cooper to Hander and all the deeds and contracts under Hander and his grantees, as set out above, and prayed for their cancellation. On May 7, 1929, an amended petition was filed in that suit, making Mr. and Mrs. O'Fiel parties. They filed their answer on the 19th of September, 1929. In October, 1927, Sabra Benn, joined by Gladys Cooper Brockington and her husband and Lee Vernon Wilson and Terry Wilson, minors, suing by Sabra Benn as next friend, filed a second suit against Mr. and Mrs. O'Fiel and the Security Realty & Development Company.

The two suits filed by Sabra Benn were consolidated, and the plaintiffs filed their first amended original petition therein on the 21st of March, 1930, on which this case was tried, pleading that Sabra Benn was the divorced wife of W. B. Cooper; that Gladys Cooper Brockington, Terry Cooper, and Willie Hebert were the children of that marriage; that Sabra Benn had purchased the interest of Willie Hebert and Terry Cooper in said property which, added to her community interest, gave her an undivided six-eighths interest; that Gladys Cooper Brockington owned an undivided one-eighth interest and Lee Vernon Wilson and Terry Wilson, minors, together owned the other one-eighth interest; the judgment above described, as having been entered upon citation by publication, and all conveyances under W. B. Cooper and his grantees, direct and remote, were attacked by pertinent allegations with a prayer for cancellation and for the cancellation of the vendor's lien notes reserved in the Divers-Cooper contract. On the 27th of October, 1931, the defendants answered the consolidated suit by general and special demurrers, general denial, pleas of not guilty, and the two, three, five, and ten years statutes of limitations, and that they acquired their title under W. B. Cooper in good faith without notice of the claim of plaintiffs. They also pleaded improvements in good faith and other defenses not necessary to mention. Plaintiffs replied by a supplemental petition, pleading limitation against the superior title reserved in the Divers-Cooper contract and all the Divers-Cooper vendor's lien notes, claimed by Security Realty & Development Company, except note No. 83, and tendered payment of that note, but made no tender of payment of the other unpaid vendor's lien notes. Against this pleading defendants answered that they were the owners of the legal title to the property in controversy. In reply to this answer plaintiffs made no tender of any kind to defendants, except the payment of note No. 83, as stated above, nor did they plead any equities against the right of the defendants to declare the forfeiture and to repossess the property.

The jury found facts avoiding the judgment above described as having been rendered on citation by publication. The jury also found against the plea of ten years' limitation, pleaded by defendants, which was the only limitation issue submitted to the jury. The rental value of the property was fixed at $12 per month. Answering defendants' special issue No. 1, it was found that W. O. Crow, at the time he acquired his interest in this property, had actual notice of the claim of Sabra Benn in and to said property. Answering plaintiffs' special issue No. 2, it was further found that W. O. Crow could not have discovered, by the use of reasonable diligence, that Sabra Benn was asserting a claim to the property. No issue was submitted as to whether or not Dr. Hander and Mr. and Mrs. O'Fiel and the Security Realty & Development Company were innocent purchasers. From the evidence it appeared beyond controversy that they paid value for the property when it was conveyed to them respectively, but that they knew of the claim of Sabra Benn when they purchased it. The issue of innocent purchaser, as to R. C. Divers, was not submitted, though requested by defendants. Under the verdict of the jury, judgment was entered in favor of defendant Security Realty & Development Company against plaintiffs for the title and possession of the property and that the other defendants go hence without day. From that judgment plaintiffs have duly prosecuted their appeal to this court.

### Opinion.

Under the view we take of the facts of this case, the validity of the judgment rendered upon citation by publication as described above, the conflict between the specially requested issues Nos. 1 and 2 as given above, and the fact that Dr. Hander, Mr. and Mrs. O'Fiel, and appellee Security Realty & Development Company bought with notice of Sabra Benn's claim, do not control the judgment and will not be further discussed.

■ Appellee Security Realty & Development Company holds the title to the W. B. Cooper interest in the property under a regular chain of transfers. This conclusion follows from the undisputed facts. Divers held Cooper's one-half interest in the property under the Hander and Crow deeds. On this title, he entered into his contract of sale with Cooper to sell the property back to him, reserving vendor's lien notes to secure the purchase price, and reserving the right to declare a forfeiture of the sale and to take possession from Cooper in the event default was made in the payment of the notes. The notes, with title to the property, were conveyed by Divers to Mrs. O'Fiel and by her to appellee Security Realty & Development Company. Owning these notes and title,

appellee declared the forfeiture, seized the property and went into possession thereof, and has been continuously in possession from that time. This act by appellee invested it with the legal title and as appellants pleaded no equities against this act of forfeiture and possession, that is, made no tender of the unpaid purchase price, the title in appellee was absolute.

■■ Appellants' only answer to this conclusion is their proposition that the superior legal title claimed by appellee and also all the Divers-Cooper vendor's lien notes, except the one for which payment was tendered, were barred by limitation at the time the forfeiture was declared and possession taken by appellee. Whether or not the notes, lien, and superior title were barred by limitation we do not decide because on the record as a whole it is immaterial. Articles 5694, 5695, Vernon's Sayles' Ann. Civ. St. 1914. The facts of this case bring it under the provisions of these articles of the statute prior to the 1925 codification. This was not a suit by appellee to recover the title and possession of the Cooper lot by virtue of the superior title conveyed to it by Divers and Mrs. O'Fiel, but was purely a defensive claim against appellant's action in trespass to try title. It is the holding of our Supreme Court, construing these articles of the statute, that they do not affect the rights of the vendor, as holder of the superior legal title, but only bar his right of action thereon when affirmatively asserted by him in the courts. The point of distinction is that appellants, and not appellees, were plaintiffs. Where the vendor rescinded, though the notes were barred by limitation, under the articles cited above, at the time of rescission, and entered possession, his vendee could recover only by tendering payment of the unpaid purchase money notes. Bunn v. City of Laredo (Tex. Com. App.) 245 S. W. 426. That case holds directly that a defensive claim under the superior title, such as appellee asserted in this case, does not fall within the bar of these statutes. See, also, Barker v. Temple Lumber Co. (Tex. Sup.) 37 S.W.(2d) 721; Cocke v. Church (Tex. Civ. App.) 23 S.W.(2d) 743, 745; Guevara v. Guevara (Tex. Com. App.) 280 S. W. 736; Teston v. Brannin (Tex. Civ. App.) 261 S. W. 788; Pecos Merc. Co. v. McKnight (Tex. Civ. App.) 256 S. W. 933.

Appellee would sustain its judgment for the Sabra Benn one-half interest on two grounds: First, it says, under the undisputed evidence, it is entitled to judgment on its plea of ten years' limitation, notwithstanding the verdict of the jury. This contention is denied. The jury's verdict on this issue had some support in the evidence; besides, the verdict was a bar to judgment on the issue of limitation, and was not set aside.

The second contention is that the evidence raised the issue and supported it, as a matter of law, that Divers was an innocent purchaser of the Sabra Benn interest, thereby acquiring her title, and, as owner of her interest, he had conveyed it to Mrs. O'Fiel and she to appellee. In discussing this issue appellants do not controvert the proposition, announced in Hill v. Moore, 62 Tex. 610, that, where the property is in the name of the husband alone, a purchaser under him, who has paid value, without actual notice of the wife's interest, will be protected against her claim or that of her heirs; and that the burden is on her or her heirs to show that the purchaser took with notice. Their proposition, as we understand their argument, is that the divorce decree vesting Sabra Benn with an undivided one-half interest in the property converted her equitable title into a legal title; and to be an innocent purchaser of her legal title, the burden rested upon appellee to show that Divers bought without notice and for value. Giving this proposition full effect, we believe appellee, as a matter of law, sustained its contention that Divers was an innocent purchaser. Holding Divers' title, acquired by him as an innocent purchaser under Hander and Crow, judgment was properly rendered in appellee's favor, though it knew of Sabra Benn's interest at the time it purchased the property through Divers and Mrs. O'Fiel.

The following statement sustains our conclusion that Divers was an innocent purchaser of the Sabra Benn title: He was dead when this case was tried, so neither party had the benefit of his testimony. Divers' deed recited a cash consideration and two witnesses swore that it was paid by him. Though both these witnesses were interested in this lawsuit, there was no controverting testimony and there is nothing in the record to detract from their credibility, so far as their testimony related to the issue of payment. Therefore, it was the duty of the court to accept their testimony as true. San Jacinto Rice Co. v. Ulrich (Tex. Civ. App.) 214 S. W. 777. No one testified that Divers had actual notice. Appellant Sabra Benn testified that he told her in the courtroom, on the day that the Hander suit against her was dismissed, that he did not know of her claim when he bought from Hander. On this statement the court correctly refused to send to the jury the issue of actual notice by Divers. Chaison v. Stark (Tex. Civ. App.) 29 S.W.(2d) 500. The fact that the divorce decree, vesting Sabra Benn with a one-half interest in the property, was of record in the minutes of the district court of Jefferson county, did not visit Divers with constructive notice of its contents. In order to have the effect of constructive notice under article 6638, R. S. 1925, it was necessary that the decree be recorded in the proper records in the office of the county clerk of Jefferson county. Russell v. Farquhar, 55 Tex. 360. Nor did the pendency of the suit of Hander against Sabra Benn, which was on the docket at the time Divers purchased from Hander, give him constructive notice of the Sabra Benn interest. In the absence of the lis pendens statutes (articles 6640–6642, R. S. 1925), the pendency of that suit would have operated as notice to Divers, but the common-law rule on this issue was abrogated by these articles of the statute, and under them the mere pendency of the suit was ineffectual to charge him with notice of Sabra Benn's interest. Kuehn v. Kuehn (Tex. Com. App.) 242 S. W. 719; Burke-Simmons Co. v. Konz (Tex. Civ. App.) 178 S. W. 587; Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447; City National Bank of Corpus Christi v. Craig, 113 Tex. 375, 257 S. W. 210; Jiles v. Citizens' Nat'l Bank of Tyler (Tex. Civ. App.) 257 S. W. 945. It follows that no issue of constructive notice was raised against Divers. Therefore, having neither actual nor constructive notice, he was an innocent purchaser of the Sabra Benn title and, as such, conveyed the superior title to Mrs. O'Fiel who, in turn, conveyed it to appellee.

More than twenty days before the trial of this case in the lower court, appellants demanded of appellee that it file an abstract of its title to the property in controversy in the trial court, as provided by articles 7376, 7377, R. S. 1925. Appellee did not file the abstract with the clerk of the trial court but, within twenty days after service of notice, furnished appellants' counsel with a copy of its abstract, which was prepared in strict compliance with the articles of the statute just cited. In accepting the abstract from appellee's messenger and receipting therefor, counsel for appellants stated that they "were not waiving any legal right" in receiving the copy of the abstract. We agree with the trial court that these facts constituted a substantial compliance with the cited articles and that appellee's chain of title was admissible in evidence. As stated above, appellants specially pleaded appellee's chain of title and offered the same in evidence "for the purpose of showing the adverse claim of the defendants." Where the plaintiff specially pleads his title and the chain of title under which defendant holds, and prays for cancellation of the defendant's chain of title, articles 7376 and 7377 have no application.

For the reasons stated, the judgment of the lower court is in all things affirmed.