Robert PREWITT, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–1379.

United States Court of Appeals, Fifth Circuit.

June 30, 1986.

Frank Oliver, McGinnis, Lochridge & Kilgore, Austin, Tex., DeLange, Hudspeth, Pitman & Katz, C.M. Hudspeth, Houston, Tex., for plaintiff-appellant.

Ben G. Sewell, Houston, Tex., for amicus curiae Sewell & Riggs.

Martha B. Brissette, Glenn L. Archer, Jr., Asst. Atty. Gen., U.S. Dept. of Justice, Tax. Div., Michael L. Paup, Chief, Wynette J. Hewett, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, and JOLLY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

The principal issue presented by this appeal is whether under Texas law a former spouse must record in the county deed records her separate interest in real property created by a divorce decree in order to protect the interest against the other spouse's creditors without notice of the decree. The other spouse's creditor without notice, in this case the Internal Revenue Service ("IRS"), filed a federal tax lien against him after the divorce decree became final but before it was properly recorded in the office of the county clerk. We affirm the district court in its ruling for the IRS and against an intervening purchaser from the former spouse.

## I. FACTS

Prior to September 9, 1982, certain real property in Travis County, Texas, ("the property") known as the Bouldin Creek Apartments was owned by James and Johanna Damon. The Damons were married and owned the land as community property under Texas law. James worked as an income tax return preparer. His activities attracted the attention of the IRS, which investigated various illegal aspects of his methods, and James was eventually incarcerated in July 1982. On July 9, 1982, Johanna filed for divorce in state district court in Travis County. During July or August, Johanna told two IRS special agents who were returning documents used in the prior criminal prosecution against them that she "was getting a divorce" from James.

A decree of divorce was entered on September 9, 1982. The decree stated that "all property, real, personal, or mixed" belonging to James was awarded to Johanna as her separate property. The decree was filed in the court records of the Travis County District Clerk's Office on September 9, and the entry of the decree was noted on the docket sheet. A copy of the divorce decree was not filed in the deed records of the Travis County Clerk until after the IRS levy at issue in this case.

The divorce decree was not appealed, and became a final judgment on October 9. James never executed a deed conveying the property to Johanna.

On December 15, 1982, the IRS assessed civil penalties amounting to $134,750 against James for preparing returns which understated various taxpayers' liabilities. On May 13, 1983, the IRS filed a notice of federal tax lien against James for this amount in the Travis County Clerk's Office. The notice named James but not Johanna. On May 23, Robert Prewitt purchased the property from Johanna without knowledge of the tax lien against James. Johanna, her attorney, and the title company all knew of the tax lien but felt that it did not affect the property because of the prior divorce of James and Johanna and because only James was listed on the tax lien notice.

About August 10, 1983, the IRS seized the property under an IRS levy to collect the penalties owed by James. Prewitt then sued in federal court to attack the levy and in state court to quiet title; the state action was removed to federal court and the actions were consolidated. On stipulated facts, Prewitt and the IRS filed cross motions for summary judgment. The district court found that the IRS was entitled to the protection given creditors under Texas recording statutes, and that, because Johanna did not record her interest in the property after the divorce decree, therefore the tax lien attached prior to Prewitt's purchase. The court further held that the IRS was a creditor without notice of the property division, notwithstanding the filing of the divorce decree in state court or the discussion between Johanna and the special agents. The court thereupon granted the IRS's motion for summary judgment and denied Prewitt's, ordering that the IRS was entitled to sell the property and apply the proceeds to satisfy the assessment against James. Prewitt appeals.

## II. DISCUSSION

■ A threshold issue is Prewitt's claim that on the date of the assessment of civil penalties against him, James owned no interest in the property to which the tax lien could attach. The tax lien arose for priority purposes on December 15, 1982, the date of the assessment. *See* I.R.C. § 6322. However, on that date James had no enforceable interest in the property as against Johanna, the divorce decree which awarded her the property having become final two months before. A federal tax lien can attach "all property and rights to property, whether real or personal" belonging to a delinquent taxpayer. I.R.C. § 6321. Whether such a taxpayer has any rights to property is a question determined by state law. *See United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). Thus, Prewitt argues, since James had no rights in the property, the tax lien is void.

■ While on its face somewhat appealing, this argument is foreclosed by *United States v. Creamer Industries, Inc.,* 349 F.2d 625 (5th Cir.), *cert. denied,* 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965). The delinquent taxpayer in *Creamer* sold several tracts of land to a bona fide purchaser, but the deed which was recorded had erroneously failed to include certain of the tracts. Subsequently a federal tax lien attached against the taxpayer, and only later was the deed corrected to include the omitted property. The *Creamer* court held that because the conveyance of the omitted property was not timely recorded, the IRS was a creditor without notice and was thus entitled to the protection of the relevant Texas recording statute, then found at Tex. Rev.Civ.Stat.Ann. art. 6627 (Vernon 1969). A strong dissent complained that the "Taxpayer here had *no* right in or to the property" as required by section 6321 because the conveyance was binding as between the parties even absent recording of the deed. 349 F.2d at 629 (Brown, J., dissenting) (emphasis in original). The *Creamer* majority thus faced and rejected the identical argument now advanced by Prewitt. The IRS may take advantage of state recording statutes, and the right of certain of James' creditors to reach property he formerly

owned until the disposition is properly recorded is sufficient to support a tax lien on the property.

### 1. Applicability of Texas Recording Statutes to the Divorce Decree

■ Our next step is to determine which, if any, of the Texas recording statutes required Johanna to record the divorce decree. If she was not required to record, then because of "the common law rule that a lien creditor is confined to the interest of his debtor in the land at the time of levy,"[1] Prewitt will prevail. The district court examined two statutes. The first, the same provision crucial to *Creamer*, requires that any "conveyance" of real property as well as any "mortgage or deed of trust" be recorded to be valid against creditors without notice. Tex.Prop.Code Ann. § 13.001 (Vernon 1984) (formerly at Tex.Rev.Civ. Stat.Ann. art. 6627 (Vernon 1969)). The former version of this statute in effect prior to January 1, 1984, required the recording of "[a]ll bargains, sales and other conveyances whatever, of any land, tenements and hereditaments...." This section was reenacted as a nonsubstantive revision with the intention not to make any material changes. *See* Revisor's Report, *reprinted in* Forward to Proposed Code, Tex.Prop.Code Ann. vol. 1 at VII–VIII (Vernon 1984). A second potentially applicable recording statute provides that "[a] court order partitioning or allowing recovery of title to land must be recorded with the county clerk of the county in which the land is located in order to be admitted as evidence to support a right claimed under the order." Tex.Prop.Code Ann. § 12.-005(a) (Vernon 1984) (effective January 1, 1984).[2]

The first statute, requiring the recording of conveyances, does not appear applicable.

No Texas case has been found applying the former article 6627 to divorce decrees. Additionally, the Texas Supreme Court has recently stated that "[A] division of the community [property pursuant to a divorce decree] is similar to a partition of property and 'is not a divesting of title of either owner....'" *Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex.1982) (holding that a division of community property is not an unlawful "divesting" of a divorcing spouse's separate property, citing *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299 (1960)). This suggests that a divorce decree cannot be a "conveyance" as contemplated by this statute. Since recording statutes are in derogation of common law principles, long established Texas doctrine recognizes that they should be narrowly construed. *See Johnson v. Darr*, 114 Tex. 516, 272 S.W. 1098 (1925); *Jensen v. Bryson*, 614 S.W.2d 930 (Tex.Civ.App.—Amarillo 1981, no writ). The district court did not unequivocally hold that the former article 6627 applied, reasoning that *either* former articles 6627 or 6638 applied. The IRS does not strongly argue for the applicability of former article 6627 and appears to have largely abandoned this argument. Because of our holding below that the former section 6638 applies, however, we need not attempt to settle this aspect of Texas law.

A far more likely candidate for the resolution of this dispute is the former article 6638, which requires the recording of partitions. Prewitt argued below, and maintains here, that the former article 6638 is merely a rule of admissibility, not a rule voiding unrecorded transactions as to third parties. On its face, the statute would seem to be so intended, but the Texas Supreme Court has squarely held to the contrary. *Permian Oil Co. v. Smith*, 129

---

1. *See Jensen v. Bryson*, 614 S.W.2d 930, 933 (Tex.Civ.App.—Amarillo 1981, no writ).

2. The former version, similarly intended to be reenacted without material change, provided the following:

Every partition of land made under an order or decree of a court, and every judgment or decree by which the title to land is recov-

ered shall be duly recorded in the office of the county clerk in which such land may lie; and until so recorded, such partition, judgment or decree shall not be received in evidence in support of any right claimed by virtue thereof.

Tex.Rev.Civ.Stat.Ann. art. 6638 (Vernon 1969).

Tex. 413, 107 S.W.2d 564 (1937). The *Permian* court discussed Texas precedent and then concluded that the statute could not be so limited:

Article 6638 has been construed several times by this court to be a registration statute and therefore not a rule of evidence precluding proof of an unrecorded judgment, just as the rule concerning the Act of 1836 covering unrecorded deeds was announced in *Crosby v. Huston* [1 Tex. 203 (1846)]. The unrecorded deed under the Act of 1836 was admissible to enable the claimant thereunder to make out his prima facie case. But upon the introduction in evidence by the subsequent purchaser of a conveyance taken while the senior deed was off the record the burden then fell on the unrecorded deed holder to show notice or lack of consideration on the part of the junior deed holder.

Such we believe is also the rule under article 6638.

107 S.W.2d at 571–72.

Texas courts have interpreted the former article 6638 to require the recording of divorce decrees which affect title to real estate. *See Benn v. Security Realty & Development Co.*, 54 S.W.2d 146, 150 (Tex. Civ.App.—Beaumont 1932, writ ref'd). The *Benn* court held that an unrecorded divorce decree, which the former wife claimed gave her a one-half interest in community real property, was ineffective as against a later purchaser who bought the property from her former husband. The *Benn* court stated that:

The fact that the divorce decree, vesting [the former wife] with a one-half interest in the property, was of record in the minutes of the district court of Jefferson county, did not visit [a subsequent purchaser in the former husband's chain of title] with constructive notice of its contents. In order to have the effect of constructive notice under article 6638, R.S.1925, it was necessary that the de-

cree be recorded in the proper records in the office of the county clerk of ... [the] county [where the property was located].

*Id.* Prewitt has been unable to distinguish or otherwise cast doubt on *Benn*.[3]

*Benn* was cited with approval in *Myers v. Crenshaw*, 116 S.W.2d 1125, 1131–32 (Tex.Civ.App.—Texarkana 1938) (holding that a former wife was estopped by lapse of time to assert her equitable interest in land), *aff'd*, 134 Tex. 500, 137 S.W.2d 7 (1940). The *Myers* court summed up the *Benn* holding and then explained its rationale:

It is apparent from the foregoing opinion that, if anything be included in the divorce decree intended to affect title to real estate, then such decree must be recorded in the office of the county clerk of the county where the land is situated, for otherwise, if the pleadings in a divorce action or a divorce decree which merely contained recitals to land which might put a third person on inquiry be constructive notice, it would become mandatory that this third person examine the minutes of all the district courts of Texas until such possible decree be found or be ascertained not to exist. Such a result would be saying if the decree adjudicates the title, then inquire at the county clerk's office where the land is situated for your notice, but if it merely contains a recital to land, then search the judgment rolls of all the district courts of Texas where a divorce can be granted after six months' residence of a plaintiff. Hence we reach the conclusion that the recitals in the judgment roll of the district clerk's office pertaining to this decree did not effect constructive notice to the [subsequent purchasers].

*Id.* While dicta, this language fully supports the IRS's reading of *Benn*.

An amicus brief, submitted by the law firm which apparently represented the title company involved in this case, claims that

---

**3.** At oral argument counsel for Prewitt attempted to distinguish *Benn* only on the ground that it predated the Texas Family Code. *See* Tex. Fam.Code Ann. (Vernon 1975) (first adopted 1970). However, counsel for Prewitt conceded that no particular provision of the Family Code dealt with the recording of divorce decrees affecting title to real property.

"the traditional view" has been that divorce decrees need not be recorded, but cites no direct authority for this proposition. The issue is not, as the amicus claims, a question of first impression in Texas, although no recent cases have been discovered reaffirming this perhaps overlooked rule. The *Cameron* decision, although not concerned with recording requirements, indicated that a divorce decree was "similar to a partition," suggesting that, like other partitions, it must be recorded pursuant to the former article 6638. In *Hailey*, which was cited by *Cameron*, the Texas Supreme Court more explicitly applied a rule of law governing a partition suit to the division of community property. *See* 331 S.W.2d at 299 (upholding a division of community property). The amicus' claims of what "the traditional view" has been are contrary to those of authors who have cautioned Texas attorneys to record a divorce decree in the deed records if it partitions real estate. *See Family Law: Texas Practice and Procedure* § 62.21[2][a] (B. Kazen ed. 1986) ("[t]he decree which is intended to pass title should be recorded in the deed records of the county where the real property is located, just as if it were a separate instrument of conveyance"); Rudberg, *Enforcing Divorce Judgments and Property Settlement Agreements in Texas*, 5 Tex.Tech L.Rev. 645, 652 (1974) ("[a]ll documents of conveyance of real estate or encumbrances thereon or the judgment with partition provisions should be recorded in the deed records").[4]

### 2. *Notice to the IRS*

■ Prewitt's final contention is that, even if Johanna was required to record the divorce decree, the IRS was not a creditor "without notice" as contemplated by the recording statutes. The former article 6627 specifically requires a creditor to be "without notice" in order to gain priority from a third party's failure to record. While neither the former article 6638 nor its new codification states that a creditor must be without notice, the *Permian* opinion leaves little doubt that lack of notice is part of its judicially added gloss. *See* 107 S.W.2d at 571–72. Prewitt claims first that the filing of the divorce decree in state district court provided constructive notice to the IRS, and second that the discussion between the IRS special agents and Johanna put the IRS on actual, or at least "inquiry" notice of the divorce decree.

Prewitt's first notice argument is essentially a reurging of his contention that divorce decrees need never be recorded in the deed records at all. The only case cited by Prewitt on this proposition is not controlling authority. *See Roemer v. Traylor*, 60 Tex.Civ.App. 437, 128 S.W. 685 (Tex.Civ.App.1910, writ ref'd). The *Roemer* court relied on the common law rule that a divorce action is a proceeding in rem, giving constructive notice to all third parties, in order to hold that a former husband's creditor could not levy against cattle awarded to the former wife in a divorce decree. The *Roemer* court never suggested that an interest in cattle, as opposed to land, need ever be recorded in the deed records to prevail against a subsequent creditor; the court only applied the principle that a former husband no longer represents a former community estate awarded solely to the former wife. As the *Myers* court points out, "[*Roemer* ] was not dealing with land or the registration statutes, and, in our judgment, is not in conflict with *Benn*...." 116 S.W.2d at 1132. Moreover, the common law notion of constructive notice of ongoing proceedings has been superseded by the lis pendens statutes. *See* Tex.Prop. Code Ann. §§ 12.007, 13.004 (Vernon 1984) (former versions at Tex.Rev.Civ.Stat.Ann. arts. 6640–43 (Vernon 1969)).

Prewitt's second notice argument is more weighty but ultimately also unpersuasive. He contends that since the special agents who were working on another matter were orally informed by Johanna in July or August of 1982 that she was "getting a divorce" that the IRS was put on sufficient

---

**4.** At oral argument counsel for Prewitt admitted that "most prudent practitioners see to the recording of some incident of title ... most divorce lawyers will obtain a deed...."

actual notice so as to demand its further inquiry into the status of the property. While Texas law does have a doctrine of "inquiry" notice, a major failing of Prewitt's argument is that there was no divorce decree for the IRS to discover at the time Johanna spoke to the special agents; it was not filed until September 9.

Under Texas law, actual notice " 'embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.' " *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 289 (1951) (citations omitted). Prewitt seeks to impose on the IRS not only a duty to inquire, but also a duty to monitor all pending litigation; such a requirement goes beyond the usual concept of inquiry notice, for the information was not "at hand" or even in existence at the time. We agree with the district court's contention that the IRS's duty to inquire, if any, would have been discharged by a search of the deed records. Such a search would have been fruitless until the divorce decree was finally filed in the deed records, which occurred after the tax lien attached.[5]

Accordingly, we affirm the judgment of the district court in all respects.[6]

AFFIRMED.

E. GRADY JOLLY, Circuit Judge, specially concurring:

I concur because, and only because we are bound by our own precedent in *United States v. Creamer Industries, Inc.*, 349 F.2d 625 (5th Cir.1965). I concur specially to note that I am in full accord with Judge Brown's dissent in *Creamer:* "The Federal Statute creates a lien only 'upon all property and rights to property ... belonging to such person [taxpayer].' Unless there is property belonging to the taxpayer, the government's lien is nonexistent." 349 F.2d at 629.

Here, pursuant to the divorce decree, the property was transferred from the taxpayer to his wife in a final judgment on October 9, 1982. From that point forward, the taxpayer had no interest or right whatsoever, legal or equitable, in this property. On December 15, 1982, a federal tax lien against the taxpayer attached "all property and rights to property whether real or personal" belonging to the taxpayer. I.R.C. § 6321. Whatever the lien attached to, it did not attach to this property because it in no way, shape or form belonged to the taxpayer.

Nevertheless, the majority is clearly correct in holding that *Creamer* controls and the majority is correct in its analysis and application of the relevant Texas statutes that support its holding, and I therefore concur.

---

5. Moreover, the special agents were only returning documents required in the prior criminal prosecution of the Damons, and they had no role in the assessment or recovery of civil penalties against James.

6. Prewitt has moved to certify key questions of state law to the Texas Supreme Court under recently enacted authority to do so. *See* Tex. Const. Proposed Amendments, art. V, § 3–C (Vernon Supp.1986) (adopted by referendum November 1985, effective January 1986). In determining whether to exercise our discretion to certify, we examine many factors, the most important of which are "the closeness of the question and the existence of sufficient sources of state law ... to allow a principled rather than conjectural conclusion." *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir. 1976). We are of the opinion that the Texas case law on these issues appears sufficient to provide a reasonably reliable answer. We therefore decline Prewitt's invitation.