**Mary Joyce THOMSON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3–93–419.**

United States District Court,
D. Minnesota,
Third Division.

Aug. 29, 1994.

Jay Brendan Kelly, Saint Paul, MN, for plaintiff.

John A. Marrella, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

RENNER, Senior District Judge.

### *INTRODUCTION*

Mary Joyce Thomson brings this action pursuant to 28 U.S.C. § 1346(e) and 26 U.S.C. § 7426 claiming that the Internal Revenue Service ("IRS") wrongfully levied upon certain of her real property.

Both parties subsequently moved for summary judgment on the issue of whether the levy was lawful. The Court[1] denied both motions. The matter is now before the Court for trial without a jury. Based upon all the files, records, submissions and proceedings herein and for the reasons set forth below, the Court finds that the levy was lawful and will not be overturned.

### *FINDINGS OF FACT*

### I. THE PROPERTY

On January 11, 1967 Douglas and Mary Thomson, then husband and wife, entered into a twenty-year contract for deed as vendees covering a parcel of real property located at 916 Lincoln Avenue, St. Paul, Minnesota, legally described as

> Lot fourteen (14), Block Twenty-four, "Summit Park addition to St. Paul," Ramsey County, Minnesota.

("the Property"). Joint Ex. 1. Under the contract for deed, Douglas and Mary Thomson held the Property as joint tenants.[2]

On February 1, 1971, the District Court of Ramsey County, Family Court Division, issued Mary and Douglas Thomson a divorce decree, the terms of which were stipulated to by the parties. Pursuant to the decree, the court awarded Mary Thomson "the exclusive use, ownership and possession" of the Property. Joint Ex. 2. The court further ordered that "the defendant shall execute all

---

**1.** The Honorable Richard H. Kyle, United States District Court Judge. The case subsequently was transferred to the undersigned.

**2.** Plaintiff argues that because Thomas Edwards, vendor of the Property under the contract for deed, holds legal title to the Property, "Douglas Thomson *at no time* had a recorded interest in the Property!" If Plaintiff intends to suggest by this fact that Douglas Thomson never held an interest in the Property, Plaintiff, Mary Thomson, necessarily suggests that neither did she. The Court assumes that she does not wish the Court to proceed under this premise. In any event, the Court finds that Douglas and Mary became equitable titleholders upon completion of the payments under the contract for deed. *See Karalis v. Agnew*, 111 Minn. 522, 525, 127 N.W. 440 (1910).

necessary documents to effectively vest ownership in plaintiff and upon failure to do so such ownership shall vest in plaintiff, Mary Joyce Thomson, by this Decree." *Id.*

Following the divorce, Douglas Thomson continued to exhibit signs of ownership in the Property. Although not required to do so under the terms of the divorce decree, Douglas Thomson continued to make payments on the contract for deed. Thomas Edwards, the vendor under the contract for deed, executed and delivered a warranty deed on the Property to Douglas and Mary Thomson as joint tenants on June 23, 1985. Joint Ex. 23.

In 1981, Douglas and Mary Thomson jointly conveyed a mortgage on the Property to Bruce Thomson as security for money loaned to Douglas Thomson by Bruce Thomson. Defendant's Ex. 3. In 1984, Douglas Thomson solely executed a mortgage on the Property to the Metropolitan Bank of St. Paul. Defendant's Ex. 4.

Additionally, Douglas Thomson purchased homeowners insurance on the Property and paid real estate taxes on the Property, to the extent they were paid, since 1971. Joint Ex. 26. In 1989, 1990 and 1992, Douglas and Mary together filed Ramsey County Homestead Applications, certifying that they jointly owned and occupied the property. Defendant's Ex. 8, 9, 10. On two Confession of Judgment forms for delinquent real estate taxes, filed in Ramsey County in 1988 and 1989, Douglas Thomson identified himself as contract purchaser and listed the Property as his address. Defendant's Ex. 6, 7.

On his 1990 federal income tax return, form 1040, Douglas Thomson claimed a deduction for home mortgage interest paid to Bruce Thomson in connection with the 1981 mortgage. Joint Ex. 14. Thomson also listed the Lincoln Avenue property as his home address on his 1991 IRS W-4 form. Furthermore, on a 1991 IRS form 433-A completed on March 16, 1992, Thomson listed the Property as his home address and expressly stated his interest in the Property as joint tenant. Joint Ex. 20; Defendant's Ex. 20, 22. Several other IRS forms, including 1040 forms for the years of 1986 and 1988–1992, listed 345 St. Peter St., Douglas Thomson's

law office address, as his home address. Joint Ex. 11–16.

Finally, Douglas Thomson stayed at the Lincoln Avenue address periodically during the years following the divorce. He resided exclusively at the Property from 1988 into 1991 and was an "occupant" of the Property as late as April 2, 1992. Defendant's Ex. 21; Plaintiff's Ex. 25; Joint Ex. 26.

## II. TAX ASSESSMENTS

On May 20, 1991, the IRS assessed a total of $179,752.33 in delinquent income taxes, penalties and interest against Douglas Thomson. Defendant's Ex. 17. On January 31, 1992, the IRS filed a Notice of Federal Tax Lien against Thomson at the Ramsey County Recorder's Office. Defendant's Ex. 18. The lien secured Thomson's unpaid income taxes for 1987 and 1990 in the amount of $179,-985.25. *Id.*

On March 26, 1992, IRS Agent Cheryl Pearson obtained a certified copy of the 1971 divorce decree, showing that Douglas Thomson had transferred his half-interest in the Property to his former wife, Mary. Defendant's Ex. 21. Shortly thereafter, on April 2, 1992, Douglas Thomson's attorney wrote a letter to Agent Pearson reiterating the contents of the divorce decree and stating that Douglas Thomson owned no interest in the Property, but rather that he only "occupie[d] rooms on the third floor of the house." *Id.*

On June 8, 1992 the IRS assessed a total of $2,634.80 against Douglas Thomson for his unpaid 1991 income tax and related penalties and interest. Defendant's Ex. 17. The IRS filed a Notice of Federal Tax Lien against Thomson on July 31, 1992 in the amount of $2,634.80. Defendant's Ex. 19.

On October 8, 1992, the IRS seized Douglas Thomson's half-interest in the Property for the purpose of collecting Thomson's delinquent federal income taxes. Defendant's Ex. 33; Joint Ex. 27. The following day, October 9, 1992, Douglas Thomson recorded the 1971 divorce decree at the office of the County Recorder for Ramsey County. Joint Ex. 26.

Mary Thomson subsequently brought this action claiming that because she held exclusive title to the Lincoln Avenue property

under the divorce decree, the government levy was "wrongful" under 26 U.S.C. § 7426.

## CONCLUSIONS OF LAW

### I. FEDERAL TAX LIENS AND LEVIES

 Under 26 U.S.C. § 6321, a federal tax lien attaches to all property and rights to property of a delinquent taxpayer. The broad language of section 6321 indicates the congressional intent to reach every interest that a delinquent taxpayer might have in property. *U.S. v. National Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985). While federal law governs the priority of liens, state law governs whether the delinquent taxpayer possesses an interest in property to which a federal tax lien can attach. *United States v. Brosnan*, 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960); *Medaris v. United States*, 884 F.2d 832, 833 (5th Cir. 1989); *United States v. Bank of Celina*, 721 F.2d 163, 167 (6th Cir.1983).

 A federal tax lien arises at the time the tax is assessed and continues until the liability is satisfied. 26 U.S.C. § 6322; *Shawnee State Bank v. United States*, 735 F.2d 308, 309 (8th Cir.1984); *United States v. General Motors Corp.*, 929 F.2d 249, 253 (6th Cir.1991). Any third party possessing property to which a lien has attached holds that property subject to the lien, unless the third party can claim an exception under 26 U.S.C. § 6323.[3] *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958); *Bank of Celina*, 721 F.2d at 166. Thus, once a federal tax lien has attached, the lien follows the property into the hands of third parties. *Bess*, 357 U.S. at 57, 78 S.Ct. at 1058 ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.'") (citations omitted).

 One method by which the government can collect delinquent taxes is to levy "upon all property and rights to property ... belonging to [the taxpayer] or on which there is a lien...." 26 U.S.C. § 6331(a). If a person other than the taxpayer claims an interest in property seized by the government, that party may bring an action challenging the seizure under 26 U.S.C. § 7426. In a wrongful levy action under section 7426, the plaintiff carries the initial burden to show an interest in the property. The burden then shifts to the government to prove by substantial evidence the nexus between the property and the delinquent taxpayer. The plaintiff retains the ultimate burden to prove that the levy was wrongful. *Xemas, Inc. v. United States*, 689 F.Supp. 917, 922 (D.Minn. 1988), *aff'd*, 889 F.2d 1091 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990); *Ames Inv., Inc. v. United States*, 819 F.Supp. 666, 670 (E.D.Mich.1993).

Plaintiff clearly has established her interest in the levied-upon half of the Property under the divorce decree. The United States similarly has satisfied its burden of showing a nexus between Douglas Thomson and the Property. The issue remaining, therefore, is whether the levy was wrongful, or, otherwise stated, whether Mary Thomson's interest in the Property is superior to the interest of the United States.

Mary Thomson claims that the government lien on the Property is void by virtue of the 1971 divorce decree. Pursuant to the decree, Plaintiff argues, Douglas Thomson transferred to her his entire interest in the Property, retaining no "property or rights in property" to which a lien could attach; therefore, Mary Thomson's interest in the levied-upon half of the Property is superior to any interest claimed by the United States.

The government responds that by failing to record the conveyance as required by the Minnesota Recording Act, Douglas Thomson retained an interest in the Property sufficient to support the federal tax lien. Thus, the government contends, because the lien attached to the Property prior to Douglas Thomson recording the conveyance, the IRS lien is superior to Mary Thomson's interest in the levied-upon half of the Property.

---

**3.** The parties do not claim that an exception to section 6323 applies to this case.

## II. THE MINNESOTA RECORDING ACT

The Minnesota Recording Act governs conveyances of real property. Under the Recording Act,

[e]very conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and *every such conveyance not so recorded shall be void* as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded, and *as against any attachment levied thereon or any judgment lawfully obtained* at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance....

Minn.Stat. § 507.34 (1993) (emphasis added). A "conveyance" under the Recording Act includes "every instrument in writing whereby any interest in real estate is created, aliened, mortgaged, or assigned or by which the title thereto may be affected in law or in equity...." Minn.Stat. § 507.01. A copy of a court judgment, order or decree "affecting title to real estate or any interest therein, may be recorded in any county where any of the lands lie, in the same manner and with like effect as a conveyance." Minn.Stat. § 507.26.

 The Recording Act provides that an unrecorded conveyance is void against a subsequent purchaser or judgment creditor acting in good faith. *Hentges v. P.H. Feely & Son, Inc.,* 436 N.W.2d 488, 492 (Minn.Ct.App. 1989). The purpose of this statute is to protect purchasers and judgment creditors who rely on the record against claims to the real estate of which they possessed no notice. *Miller v. Hennen,* 438 N.W.2d 366, 369 (Minn.1989).

The United States, by reason of its tax assessments against Douglas Thomson, stands in the position of judgment creditor.

See *Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) (a federal tax assessment "supersedes the pleading, proof and judgment necessary in an action at law, and has the force of such a judgment"). Section 507.34 does not apply to a creditor, however, with actual, constructive or implied notice of a third party's inconsistent rights in the property. *Miller,* 438 N.W.2d at 369.

Plaintiff advances numerous arguments as to why the Minnesota Recording Act does not apply to the conveyance of the Property under the divorce decree. First, Plaintiff argues that because the divorce decree transferred the "exclusive use, ownership and possession" of the Property to her, Douglas Thomson retained no interest to which a lien could attach; therefore, the IRS had no valid judgment prior to the recording of the Property on October 8, 1992. Second, Plaintiff argues, the divorce decree by its own terms vested title in Mary Thomson, obviating the requirements of the Recording Act. Third, Plaintiff contends that under Minnesota Statute section 500.19 Subd. 5, the divorce decree severed the parties' joint tenancy interests in the Property, rendering recording of the conveyance unnecessary. Finally, Plaintiff argues, the IRS had actual, constructive and implied notice of Mary Thomson's exclusive interest in the Property, removing the status of the IRS as a judgment creditor in good faith. The Court will address each argument in turn.

### A. Douglas Thomson's Remaining Interest After the Divorce Decree

As a threshold issue, the Court must determine whether Douglas Thomson retained an interest in the Property after the divorce to which a federal tax lien could attach. The Fifth Circuit, in *Prewitt v. United States,* 792 F.2d 1353 (5th Cir.1986), addressed this precise issue in deciding whether under Texas law,[4] a former spouse must record her interest in real property conveyed under a divorce

---

4. The court applied a Texas recording statute which provided:

[a] court order partitioning or allowing recovery of title to land must be recorded with the county clerk of the county in which the land is located in order to be admitted as evidence to support a right claimed under the order.

*Prewitt,* 792 F.2d at 1356 (citing Tex.Prop.Code Ann. § 12.-005(a) (1984)).

decree to protect that interest against the other spouse's creditors. The divorce decree at issue in *Prewitt* awarded the ex-husband's half-interest in real estate to the ex-wife; neither party recorded this conveyance prior to an IRS levy on the ex-husband's half-interest in the property. *Id.* at 1354. A third party purchaser without notice of the lien argued that the ex-husband owned no interest in the property to which a lien could attach as of the date of the divorce decree, which date preceded the federal tax lien. *Id.* at 1355.

The Fifth Circuit held that although the conveyance might have been binding between the parties, "the right of certain of [the ex-husband's] creditors to reach property he formerly owned until the disposition is properly recorded is sufficient to support a tax lien on the property." *Id.* at 1355–56.

The Federal District Court for the District of Massachusetts also addressed this issue in *United States v. Hole*, 45 AFTR2d ¶ 80–606, 1980 WL 1555 (D.Mass.1980). In *Hole*, an ex-husband executed a deed conveying his half-interest in real property to his ex-wife pursuant to a divorce decree. The IRS assessed delinquent taxes against the ex-husband after the divorce but before the parties recorded the deed. Under the Massachusetts Recording Act, a conveyance of real property between husband and wife is void unless the deed describing the property is recorded. *Id.* (citing Mass.Gen.Laws c. 209 § 3 (1992)). The court held that the parties' failure to record the deed rendered the transfer ineffective under the Recording Act, leaving the transferring party an interest in the property to which the federal lien could attach.

■ The Court finds the reasoning of *Prewitt* and *Hole* persuasive. Although those cases applied different state law, a reasonable interpretation of the Minnesota Recording Act mandates the same result in this case. While the conveyance of the Property under the divorce decree was binding between the parties, leaving Douglas with no enforceable interest in the Property against Mary, the Recording Act expressly relates to third parties. Because the statute renders an unrecorded conveyance void with respect

to good faith purchasers and judgment creditors, the transferor necessarily retains his interest as to those third parties following the ineffective transfer until the transfer is properly recorded.

■ Plaintiff's construction of the Recording Act would render any conveyance contractually binding between two parties beyond the reach of the statute. The purpose of the Act, however, is to protect good faith *third parties* against unrecorded claims to real property. Because Douglas Thomson's conveyance of his half-interest in the Property was ineffective against his creditors, he retained an interest sufficient to support a federal tax lien. *See Prewitt*, 792 F.2d at 1355–56.

## B. Vesting of Title

Mary Thomson relies on the language of the divorce decree to support her position that the decree obviated any statutory recording requirements. The decree states that "the defendant shall execute all necessary documents to effectively vest ownership in plaintiff and upon failure to do so such ownership shall vest in plaintiff, Mary Joyce Thomson, by this Decree." Joint Ex. 2. Plaintiff interprets this language to require no action by her should Douglas fail to execute and record a deed or any other document vesting title in her; rather, the decree itself would satisfy all legal requirements with respect to transferring the Property.

The effect of the divorce decree is properly analyzed under Minnesota Rule of Civil Procedure 70, which governs the vesting of title pursuant to court judgments. Rule 70 provides that where a judgment involves the conveyance of real property from one party to another, a court, rather than directing a party to convey the property, may enter a judgment divesting title in one party and vesting title in another. "Such judgment has the effect of a conveyance executed in due form of law." Minn.R.Civ.P. 70. The language of the divorce decree relied upon by Mary Thomson plainly parallels the language of Rule 70. The question remains, however, whether such a conveyance is subject to the requirements of the Recording Act.

In *United States v. Ray, Jr., et al.,* 71A AFTR2d 93–3819, 1990 WL 120646 (S.D.Ohio 1990), the court interpreted Ohio Rule of Civil Procedure 70, identical to Minnesota's Rule 70, in a context similar to the case at bar. In *Ray,* the defendant transferred his half-interest in real property to his wife pursuant to a divorce decree. The decree stated:

> All instruments necessary to carry out the execution of the above agreement have been executed and delivered into the hands of the husband prior to the time of signing this agreement for filing or delivery at the time of the filing of the Decree of the Dissolution.

*Id.* at 93–3820. The defendant failed to record the divorce decree until one day after the IRS filed a notice of tax lien on the defendant's interest in the property.

In determining whether the federal tax lien was superior to the wife's unrecorded interest in the property, the court, citing Rule 70, suggested that a court judgment specifically and unequivocally divesting title in one party and vesting it in another was exempt from recording requirements for purposes of determining priority of interests. *Id.* at 93–3821. The court determined, however, that because the divorce decree did not unequivocally vest legal title in the wife, the husband's half-interest in the property was not effectively divested until he recorded the deed; thus, the tax lien, assessed prior to recording, was valid and superior to the wife's unrecorded interest. *Id.*

The Court declines to follow the *Ray* court's interpretation of Rule 70. Under *Ray,* whether a party must record real estate conveyances pursuant to the recording statute depends entirely upon the particular language of the judgment or decree purporting to transfer property. This case-by-case result, however, completely undermines the purpose of the Recording Act.

The Recording Act aims to protect good faith third party purchasers or creditors from unrecorded interests in property. *Miller,* 438 N.W.2d at 369. For notice of competing interests in property to depend upon the precise wording of individual judgments would effectively vitiate the protection of good faith third parties who rely on the record for notice. Rather, consistent with the statute, *"every* conveyance of real estate *shall be recorded"* in the county where the real estate sits, in order to notify third parties of that conveyance. *See* Minn.Stat. § 507.34.

■ The intent of the Recording Act can be squared with the language of Rule 70. Rule 70 allows a court to effectuate a conveyance by virtue of the judgment itself rather than by directing a party to execute a deed conveying the property. In other words, the court can order that the judgment convey the property in lieu of a deed. *See Corson v. Shoemaker,* 55 Minn. 386, 57 N.W. 134, 137 (1893) (judgment of the court would pass title without the execution of a deed). That the judgment has the effect of a conveyance, however, does not remove the statutory requirement that the conveyance be recorded. *See Barton v. Drake,* 21 Minn. 299 (1875) (Although a judgment may pass title, it has no greater effect than a deed). The Rule merely simplifies the transfer for the transferee by allowing her to record the court judgment rather than relying on the transferor to first execute a separate deed. Rule 70 thus complements Minnesota Statute section 507.26, which expressly allows a decree affecting title to real estate to be recorded with the same effect as a conveyance. *See* Minn.Stat. § 507.26.

The only reasonable interpretation of the court's language in the divorce decree, consistent with state law, is the following: if Douglas Thomson failed to execute a deed in compliance with the decree, Mary could record the decree itself, in lieu of a deed, with the same legal effect. The Court finds, therefore, that the divorce decree did not obviate the statutory requirements under the Recording Act.

**C. Minnesota Statute Section 500.19**

■ Mary Thomson also argues that under Minnesota Statute section 500.19 Subd. 5, the divorce decree automatically divested Douglas Thomson of his interest in the property. The statute provides, in pertinent part,

A decree of dissolution of a marriage severs all joint tenancy interests in real estate between the parties to the marriage, except to the extent the decree declares that the parties continue to hold an interest in real estate as joint tenants.

Under this statute, a divorce decree severs a joint tenancy in real property held by a husband and wife. Upon severance, however, a joint tenancy becomes a tenancy in common with no right of survivorship. *See e.g., Hendrickson v. Minneapolis Fed. Sav. & Loan Ass'n,* 281 Minn. 462, 161 N.W.2d 688, 690 (1968); *Wendt v. Hane,* 401 N.W.2d 457, 459 (Minn.Ct.App.1987).

■ Nothing in section 500.19 divests a party of his or her interest in the property upon the dissolution of the marriage. The only effect of this statute upon Mary and Douglas Thomson was to render them tenants in common rather than joint tenants after February 1, 1971. This provision, therefore, does not alter Douglas Thomson's interest under the Minnesota Recording Act, to which the lien attached.

## D. Notice

Finally, Mary Thomson argues that the IRS had actual, constructive and implied notice of her inconsistent interest in the Property.[5] This notice, Plaintiff contends, destroys the status of the IRS as a creditor in good faith and renders Mary Thomson's interest in the Property superior to the tax lien.

■ The government concedes that the IRS had actual notice of Mary Thomson's interest as sole owner of the Property on March 26, 1992, prior to the second tax assessment of June 8, 1992. Because of this notice, Mary Thomson's unrecorded interest is valid against the second assessment. The validity of the second lien is irrelevant, however, because the first assessment on May 20, 1991 totaled $170,752.33, which amount exceeds the value of the levied-upon half of the property. The Court finds no evidence that the IRS possessed actual notice of Mary Thomson's unrecorded interest on the date of the first assessment, May 20, 1991.[6]

■ Plaintiff also appears to argue that the IRS had constructive notice of Mary Thomson's interest in the property by virtue of federal tax documents filed by both Mary and Douglas. Constructive notice, as a matter of law, imputes to third parties notice of all properly recorded interests even though the third party has no actual knowledge of the record. *Miller,* 438 N.W.2d at 369–70. Plaintiff argues that the Court should impute knowledge of Mary Thomson's interest to the IRS because Mary listed the Property as her home address on her most recently filed federal income tax return and because on several IRS documents Douglas listed St. Peter Street rather than the Property as his home address.

The address stated on a federal tax return may provide the IRS with notice of a taxpayer's "last known address" for purposes of sending communications to the taxpayer. *See King v. Commissioner of Internal Revenue,* 857 F.2d 676, 680 (9th Cir.1988). That is not to say, however, that an address on a tax return suffices to impute to the IRS the status of a taxpayer's interest in property. On various IRS forms Douglas Thomson listed 345 St. Peter Street, St. Paul, Minnesota, his work address, under the heading "Home address." While this address may notify the IRS of where Douglas Thomson can receive his communications, it certainly does not divulge anything about his ownership interests in real property.

Furthermore, even were the Court to charge the IRS with notice of information contained in federal tax documents, many of those documents show Douglas Thomson as having an interest in the Property. On his 1990 tax return, for example, Douglas Thomson claimed a deduction for home mortgage

---

**5.** The government argues that the notice exception of the Recording Act does not apply against the United States as an involuntary creditor. Because the Court finds that the IRS did not have notice of Plaintiff's exclusive interest in the property, the Court need not reach this issue.

**6.** The fact that the IRS possessed notice of the divorce decree before the levy is immaterial as the lien attached on the date of assessment. *See* 26 U.S.C. section 6322; *Shawnee State Bank,* 735 F.2d at 309.

interest, which deduction only an owner and resident may claim. *See* 26 U.S.C. § 163(h)(3)–(5). Additionally, Thomson claimed the Lincoln Avenue address as his home address on several other documents filed in Ramsey County. In short, the tax documents, considered as a whole, belie Plaintiff's claim that the IRS had constructive notice of Plaintiff's exclusive interest in the Property. The Court will not impute to the IRS Mary Thomson's unrecorded interest.[7]

■■■ Plaintiff also argues that the IRS had implied notice of Mary Thomson's unrecorded interest by virtue of Mary's possession of the Property. A court will find implied notice where a party has "actual knowledge of facts which would put one on further inquiry." *Miller*, 438 N.W.2d at 370 (quoting *Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384–85 (Minn.1978)). *See also Hentges*, 436 N.W.2d at 492 (citing *Henschke v. Christian*, 228 Minn. 142, 36 N.W.2d 547, 550 (1949)). Under Minnesota law, possession of property by a vendee constitutes notice to creditors of the vendor of the vendee's rights in the property. *Hentges*, 436 N.W.2d at 492. *See also Claflin v. Commercial State Bank*, 487 N.W.2d 242, 248 (Minn.Ct.App. 1992) ("If one is aware that someone other than the vendor is living on the land, one has a duty to inquire concerning the rights of the inhabitant of the property and is chargeable with notice of all facts which such inquiry would disclose."). To suffice as notice, however, the possession must be clear, actual and exclusive. *Id.; Teal v. Scandinavian–Am. Bank*, 114 Minn. 435, 131 N.W. 486, 488 (1911).

Plaintiff relies on *Claflin* to support her position that her "open and continuous" possession of the Lincoln Avenue Property "from 1967 to the present" gave the IRS implied notice of her competing interest. *See* Plaintiff's Memorandum in Support of Summary Judgment at 5; Plaintiff's Memorandum in Support of Her Position on Notice and Applicable State Law at 3. In *Claflin*,

the plaintiff sought to set aside, based upon implied notice, two bank mortgages which her son had executed while holding record title to the plaintiff's home. The plaintiff had quitclaimed the property to her son in exchange for a note, under which the plaintiff retained an interest in the property. The son recorded the quit claim deed but not the note. *Claflin*, 487 N.W.2d at 244–45. Following the execution of the deed, the plaintiff continued to reside at the property pursuant to the terms of the note.

The court charged the bank with implied notice of the plaintiff's interest in the property by reason of her continued possession. In holding that her possession constituted notice, the court distinguished an earlier Minnesota Supreme Court decision, *Olson v. Olson*, 203 Minn. 199, 281 N.W. 367, 369 (1938). In *Olson*, the court found a grantor's continued joint possession of property he had previously conveyed to his son insufficient to imply notice. Significantly, the *Claflin* court reasoned, the grantor's possession in *Olson* was not exclusive so as to put a third party on further inquiry. In *Claflin*, however, the plaintiff/grantor's possession was actual, open, continuous and *exclusive*, placing third parties on notice of her inconsistent interest in the property. *Claflin*, 487 N.W.2d at 249.

In light of the *Claflin* court's distinction between exclusive and non-exclusive possession, Plaintiff's reliance on *Claflin* is misplaced. For the two years immediately preceding the first tax assessment, Douglas Thomson resided at the Property while Mary rented an apartment at another address. At other times, Douglas occupied the property with Mary, a situation not inconsistent with a joint tenancy. As stated by the Minnesota Supreme Court in *Olson*, " '[w]here possession is relied on as giving [implied] notice it must be open and unambiguous, and not liable to be misunderstood or misconstrued.... It must be sufficiently distinct and unequivocal *so as to put the purchaser on his guard.*' " *Olson*, 281 N.W. at 368 (quoting *Townsend v. Little*, 109 U.S. 504, 3 S.Ct. 357, 27 L.Ed. 1012 (1883)).

---

7. Although not argued by the plaintiff, the Court notes that the divorce decree itself as a public record of Ramsey County District Court does not constitute constructive notice. Rather, the record of the conveyance must be recorded in the county recorder's office in the county where the property sits. *See* Minn.Stat. § 507.34; *Prewitt*, 792 F.2d at 1357.

Prior to the federal tax lien, Mary Thomson did not have continuous and exclusive possession sufficient to provide notice to the IRS of her unrecorded interest in the Property. Because, therefore, the IRS was a judgment creditor without notice, the unrecorded conveyance of the Property to Mary Thomson was void against the IRS and inferior to the federal tax lien.

### CONCLUSION

Based upon the foregoing and all the files, records, submissions and proceedings herein, the Court finds that the IRS levy was lawful and will not be overturned. The Court hereby enters Judgment in favor of the Defendant, the United States of America.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**