Joyce **STAFFORD, Appellant,**

v.

**Lloyd LUNSFORD, Appellee.**

**No. 01–00–00622–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 23, 2001.

Rehearing Overruled Sept. 26, 2001.

Macon D. Strother, Strother, Keiter & Mulder P.C., Houston, for Appellant.

L.T. "Butch" Bradt, L.T. Bradt, Houston, for Appellee.

Panel consists of Justices COHEN, JENNINGS, and SMITH.*

## OPINION

COHEN, Justice.

The primary issue in this legal malpractice case is whether Stafford had to pay a federal tax debt incurred by her ex-husband years after their divorce in order to remove a lien on land awarded to her in the divorce decree. Lunsford, who was Stafford's divorce attorney, argued he was not negligent by failing to advise Stafford to record the decree and that Stafford was not damaged because the lien affected only her ex-husband's property, not Stafford's. The trial court rendered summary judgment for Lunsford. We affirm in part and reverse in part.

### Facts

Lunsford represented Stafford and her husband in their 1985 divorce. He never advised Stafford to record the divorce decree awarding her the land, and the decree never was recorded. In 1991, the IRS filed a lien against Stafford's ex-husband for taxes he failed to pay years after the divorce, in 1987 and 1989.

* The Honorable Jackson B. Smith, retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

In 1997, Stafford discovered the lien and that she could not obtain financing until it was released. She paid her ex-husband's postdivorce tax debt, about $12,000, and then sued Lunsford for that loss, alleging he committed legal malpractice and violated the Deceptive Trade Practices–Consumer Protection Act (DTPA) by not advising her to record the decree.

Lunsford moved for summary judgment, asserting that (1) Stafford suffered no damages because the lien never attached to her land, (2) the DTPA exempts professional conduct, and (3) he was not negligent as a matter of law. The trial court granted the motion without stating any grounds.

## Standard of Review

■■■ A defendant is entitled to summary judgment if he disproves an element of the plaintiff's claim as a matter of law. *Doe v. Boys Clubs,* 907 S.W.2d 472, 476–77 (Tex.1995). When a summary judgment does not state its grounds, it will be affirmed if any ground advanced is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## Legal Malpractice: Negligence

Lunsford contends that, as a matter of law, he was not negligent in failing to advise Stafford to record the deed. Robert Hinton, Lunsford's expert witness, testified to that effect. We disagree.

■■■ The divorce decree Lunsford prepared transferred real estate, and "the intention of the recording acts is to compel every person receiving conveyances of real property to place such an instrument of record." *Anderson v. Barnwell,* 52 S.W.2d 96, 101 (Tex.Civ.App.—Texarkana 1932), *aff'd on other grounds sub nom.*

*Anderson v. Brawley,* 126 Tex. 182, 86 S.W.2d 41 (1935). Cases decided long before 1985, interpreting statutes in existence long before 1985, show the disastrous effects, including loss of title, of failure to record. *See Prewitt v. United States,* 792 F.2d 1353, 1356–58 (5th Cir. 1986) (citing treatise and law review articles on Texas law advising recording of conveyances between divorcing spouses); *see also United States v. Creamer Indus., Inc.,* 349 F.2d 625, 628 (5th Cir.1965) (citing Texas case law as authority for enforcing federal tax lien). In addition, the affidavit of Stafford's expert, standing alone, raised a fact issue by contradicting Hinton's statements about the standard of performance for a reasonable attorney. Lunsford did not prove as a matter of law that he was not negligent. Thus, the summary judgment cannot stand on that basis.

## Legal Malpractice: Damage

Lunsford contends Stafford was not damaged because the statute, 26 U.S.C. § 6321 (1994),[1] grants a lien only against *the taxpayer's* property, and the taxpayer, which was not Stafford but was her ex-husband, did not own this land in 1991 when the lien was filed. Therefore, the lien never properly attached to *Stafford's* land, and any payment she made was as "a volunteer." In short, Lunsford contends there never was any cloud on *Stafford's* title because there never was a lien against *her* property.

That is a powerful argument. It should be the law. Unfortunately, it is not, at least in the federal Fifth Circuit, which has twice held that the federal government can seize property of one who owes it nothing

---

1. "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property ... *belonging* *to such person.*" (Emphasis added). Lunsford relies on the italicized words to argue that the lien was effective only against the ex-husband's property, not against Stafford's.

in order to satisfy another's tax debts, even when, as here, it is admitted that the other—the delinquent taxpayer—conveyed the property in good faith long before the lien was filed. That is the harsh penalty exacted against the innocent purchaser for the sin of not recording her title, and it is exacted in full even though the federal government never extended any credit to anyone in this case, much less did so in reliance on the record ownership. *Prewitt*, 792 F.2d 1353 (no claim that government relied on title records); *Creamer Indus., Inc.*, 349 F.2d 625 (same); *see Hamilton v. United States*, 806 F.Supp. 326, 335 (D.Conn.1992) (criticizing use of recording statute to protect as "creditor" the United States, which had extended no credit). Dissenting from this state of affairs, the great John R. Brown declared:

> This is a startling result. Laws of Texas which are designed to protect innocent persons dealing in faith on the revelations of title records are twisted to permit the great national sovereign to take property from one who is the acknowledged owner of it to apply on the tax debts of another the former owner who—as the trial Court found and this Court does not dispute—has transferred the property. I do not believe that Congress ever intended any such result. *I do not think that a Court should lend its hand to anything so demeaning to a sovereign.*
>
> The Federal Statute creates a lien only 'upon all property and rights to property * * * belonging to such person (taxpayer).' Unless there is property belonging to the taxpayer, the Government's lien is nonexistent. The Texas Statute which protects business creditors and those parting with consideration on the faith of apparent record title speaks in terms of the persons against whom the conveyance is not good, such as bona fide purchasers, judgment creditors, etc. Unlike this, the Federal Statute speaks in terms of the origin of the lien. The tax lien arises, the tax lien comes into being, only as to property or rights to property belonging to the taxpayer.
>
> Clearly this property did not belong to Taxpayer. It had no right to such property. True, under Texas law a judgment creditor had a superior claim against the purchaser whose deed was imperfect for late recordation. But the one thing clear is that Taxpayer here had no right in or to the property. Not a single Texas case could possibly be dredged up which in even the most remote way would suggest the faintest hope that Maxwell, the vendor-taxpayer, had any rights, legal or equitable, against anyone—Creamer, the public, or the Publican to get the property back or assert any interest in it.
>
> And yet it is this—ownership by the taxpayer—which gives rise to the lien for the National Government. Congress has not said that this Nation has a tax lien against any and all property once owned by a delinquent taxpayer to the same extent as some innocent purchaser or judgment creditor might have under local recordation statutes.
>
> Once Congress so declares, Courts must enforce it. But the morality of the Government's taking property which the Court's opinion reflects was sold to, paid for by, and in equitable conscience and law belonged to a stranger, is so disturbing to me that before the heavy hand of the tax gatherer falls, it is for Congress to speak clearly to declare that this is the conscience of the country.

*Creamer*, 349 F.2d at 629–30 (Brown, J., dissenting) (emphasis added) (alteration in original) (citations omitted). We can say no more, and we should say no less.

Fortunately, the law is as Judge Brown would have it in at least three federal

circuits. *United States v. Gibbons,* 71 F.3d 1496, 1501 (10th Cir.1995); *Thomson v. United States,* 66 F.3d 160, 163 (8th Cir.1995); *United States v. V & E Eng'g & Constr. Co.,* 819 F.2d 331, 334 (1st Cir. 1987). These and other federal judges, in and out of the Fifth Circuit, have criticized *Creamer* and *Prewitt. See Prewitt,* 792 F.2d at 1359 (Jolly, J., concurring); *Hamilton v. United States,* 806 F.Supp. 326, 333–36 (D.Conn.1992). Moreover, it seems unlikely the United States Supreme Court would agree with *Creamer* and *Prewitt. See United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 727, 105 S.Ct. 2919, 2928, 86 L.Ed.2d 565 (1985) ("The federal statute [§ 6321] relates to the taxpayer's rights to property and not to his creditor's rights."); *United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2141, 76 L.Ed.2d 236 (1983) ("the Government's lien under § 6321 cannot extend beyond the property interests held by the delinquent taxpayer"). In *Prewitt,* the Fifth Circuit followed *Creamer* without discussing *National Bank of Commerce. See Gibbons,* 71 F.3d at 1501 (suggesting that *Creamer* and *Prewitt* are inconsistent with *National Bank of Commerce* ); *Thomson,* 66 F.3d at 162–63 (same).

None of this would have helped Ms. Stafford, however. Her land is in Texas and thus in the Firth Circuit, whose opinions in *Prewitt* and *Creamer* clouded her title. If Stafford had sued in federal court to clear her title, she would have lost unless the Fifth Circuit disapproved *Creamer* and *Prewitt.* If she had sued in a Texas court, see 28 U.S.C. § 2410(a) (1994), the United States could have removed the suit to federal court under 28 U.S.C. § 1444 (1994) and thereby prevailed. Even if the United States had defended such a case before a Texas judge who agreed with the First, Eighth, and Tenth federal circuits (and us) that no lien attached under § 6321, that lawsuit *and its* expense would have been necessitated by Lunsford's failure to advise recording. We strongly disapprove of *Creamer* and *Prewitt,* but it is plain, as a matter of law, that their interpretation of § 6321 placed a dark cloud on Stafford's property.

Because Lunsford has not proved that Stafford was not damaged, the summary judgment is not good on that ground. Accordingly, we sustain Stafford's issue in that respect.

### DTPA Violations

■ Stafford alleged two DTPA violations. *See* Tex. Bus. & Com.Code Ann. § 17.46(a) (Vernon 1987 & Supp.2001). A 1995 amendment to the DTPA exempted professional services from the statute. Tex. Bus. & Com.Code Ann. § 17.49(c) (Vernon 1987 & Supp.2001). This amendment covers suits, like Stafford's, filed on or after September 1, 1996. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20(b), 1995 Tex. Gen. Laws 2988, 3004. Therefore, the trial judge correctly rendered summary judgment on Stafford's DTPA claim. Accordingly, we overrule Stafford's issue in that respect.

### Conclusion

We affirm the summary judgment in part on Stafford's DTPA claim. We reverse the summary judgment in part on Stafford's legal malpractice claim. We remand the cause to the trial court for further proceedings limited to the legal malpractice claim.